STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. PHILIP PICCIOTTI AND ANGELO SCALLO, DEFENDANTS-APPELLANTS.

Argued March 30, 1953—Decided April. 27, 1953.

*Mr. Ward Kremer* argued the cause for the appellants.

*Mr. John M. Pillsbury*, Assistant Prosecutor of the Pleas, argued the cause for the respondent (*Mr. J. Victor Carton*, Prosecutor of the Pleas, attorney).

The opinion of the court was delivered by

OLIPHANT, J. Defendants appeal from a judgment of the Monmouth County Court entered following their conviction by a jury on indictments charging them with robbery and armed robbery. A motion for a new trial was made to the trial court and denied, following which an appeal was taken to the Appellate Division. While pending there we certified the cause on our own motion.

One Clara Bernstein, who lived in Elberon, arrived there from New York on February 12, 1952, with a paper bag containing approximately $2,766 for use as the payroll of an Asbury Park factory. When she entered the hallway of her apartment at about 6:50 P. M. she saw a man on the stairway. She thought it was a neighbor and said, "Artie." This man said, "No, it is not Artie," she walked into the house and he walked out. She then got her dog and went out into the street to give it a walk and returned in a few minutes. As she walked her dog she noticed a strange car parked in front of her door and made a mental notation of the license number. She went into her kitchen, heard a door open and

walked into the dining room when a man pointed a gun at her and as she turned another man was "face to face with her and only a half foot away." She said to this man, "Well, what is it you want?" whereupon one of them said "This is what we want," and one of them picked up the envelope with the money in it and walked out. Both of the men had guns.

Mrs. Bernstein immediately notified the police of the robbery and gave them a description of the two men and also the license number of the car she had observed while walking her dog. She told the police that the number of this car was "504" and that one of the serial numbers was "M."

Based upon the information which Mrs. Bernstein gave to the police, she was requested, two weeks later, to make identifications of people in two police lineups, at one of which she identified the defendant Picciotti and at the other identified the defendant Scallo. At the trial she also identified both of them from the witness stand as being the men who had committed the robbery in her apartment. She was the only witness for the State as to the robbery itself. Neither of the defendants took the stand in their own defense, which consisted of alibis. In an endeavor to sustain these alibis the defendant Picciotti produced four witnesses while Scallo produced three.

At the close of the State's case a motion for a directed verdict of acquittal was made and denied. Motions for directed verdicts have been abolished, *Rule 2:7–7(b)*, but taking the motion as one for judgment of acquittal, we consider it without merit. The defense contends that the physical description of the defendants given to the police by Mrs. Bernstein after the robbery did not tally with their actual physical stature, and that at the lineups she was not absolutely positive that these were the men involved. At the trial her identification was positive, and with the additional fact that a car owned by the defendant Picciotti bore license No. M J 504, there was clearly sufficient evidence to vitiate a motion for a judgment of acquittal. The test, on motion of a defendant for judgment of acquittal, is whether

there is any legal evidence before the jury from which an inference of guilt can be legitimately drawn. *State v. Bricker, Jr.,* 99 *N. J. L.* 521 (*E. & A.* 1924); *State v. Cammarata,* 12 *N. J. Misc.* 115 (*Sup. Ct.* 1934), affirmed 114 *N. J. L.* 274 (*E. & A.* 1935).

On February 27, 1952 police officers went to Picciotti's home and questioned him and his wife. According to the testimony of one of the police officers, Mrs. Picciotti told him that her husband had left his house at 6:00 o'clock the night of the crime and that he went out with Scallo. Of course, if this testimony was true, Picciotti's alibi was seriously shaken. The officer testified further that though Picciotti was present during this conversation he remained silent and did not contradict his wife.

The point of argument of defendants is that the court erred in permitting the State to introduce this testimony of statements made by the defendant's wife in his presence, in the absence of a warning that such statements would be used against the defendant.

The record indicates that defendants' counsel objected to these questions asked of Mrs. Picciotti on the ground that she had not been "warned," but there was no objection to the questions which brought out that plaintiff remained silent. Such statements, together with the testimony of the silence of the defendant, were admissible unless made in the course of a judicial inquiry or under circumstances which would render a denial inexpedient in the belief that one's security would be better promoted by silence than by reply. *Donnelly v. State,* 26 *N. J. L.* 601, 612 (*E. & A.* 1857). The statement elicited was one which injuriously affected the defendants' contention and therefore was one calling for a reply and one which he would naturally deny if he did not intend to admit it. The presence of the police in Picciotti's house did not constitute a "judicial inquiry," *State v. Rosa,* 72 *N. J. L.* 462 (*E. & A.* 1905); *State v. Kane,* 9 *N. J. Super.* 254 (*App. Div.* 1950); *State v. Bulach,* 10 *N. J. Super.* 107 (*App. Div.* 1950). The law is clear that even when an accused is under arrest this does not render inad-

missible testimony of his silence in the face of implicating statements. *State v. Rosa, supra; State v. Morris,* 94 *N. J. L.* 19 (*Sup. Ct.* 1919); *State v. Toohey,* 6 *N. J. Super.* 97 (*App. Div.* 1950).

In view of what has already been said, there is neither substance nor merit in defendants' next contention that the verdict was contrary to the great weight of the credible evidence. The rule that simply because more witnesses testify for one side than the other does not of itself create a greater weight of the evidence is too well settled and recognized to warrant comment. There was sufficient evidence here, the credibility of the witnesses being for the jury, to support the verdict. There is nothing in the case to indicate that the verdict was the result of mistake, passion, prejudice or partiality on the part of the jury. *State v. O'Connor,* 134 *N. J. L.* 536 (*Sup. Ct.* 1946); *State v. Cole,* 136 *N. J. L.* 606 (*E. & A.* 1948); *State v. Donohue,* 2 *N. J.* 381 (1949); *State v. Auld,* 2 *N. J.* 426 (1949); *Rules* 1:2–19 and 4:2–6.

Defendants further say that the trial court erred in permitting the State to put a question to a witness, one Joan Campbell, as to whether she informed defendant Picciotti's wife of her knowledge of his whereabouts on the night of the robbery. This witness testified she was in the Picciotti apartment on the evening of the robbery and that the defendant did not leave the apartment all evening. She later read of Picciotti's arrest. On cross-examination she was asked why she had not gone to the police to disclose her knowledge of Picciotti's whereabouts on the night of the robbery and she answered, "No, I didn't think it was my place to do so." No objection had been made to the question. The witness was then asked if she had given Mrs. Picciotti her information and an objection was made to this question, though no specific ground was assigned. The court properly permitted the question to be answered as going to the credibility of the witness.

Lastly, defendants claim error in the refusal of the court below to charge a submitted request to charge. Again

no objection was made to such refusal, but a reading of the full charge clearly demonstrates that the jury was properly and adequately instructed. The request did not embody any recognized principle of law with which the jury had not been familiarized.

With respect to the failure of counsel to object to the admission of evidence and the charge of the court, advantage is endeavored to be taken of *Rule* 1:2-19(a) wherein it is stated, *inter alia*, that "The court may, however, notice plain errors affecting substantial rights of the defendant, although they were not brought to the attention of the trial court."

The trial court is entitled to be apprised of alleged errors in the conduct of a case so that it may have an opportunity of correcting them. Counsel cannot sit idly by and speculate on answers to questions or the effect of a charge and then, if the verdict goes against their client, raise in an appellate court matters which should have been complained of below. *Rule* 1:2-19a is not a haven of refuge for those who fail to comply with the ordinary rules governing criminal trials. While the case of *Williamson v. Berger*, 11 *N. J.* 500 (1953), dealt with a civil trial, what was said there concerning *Rule* 1:2-20(c) is pertinent here.

The rule is designed to allow the appellate court to consider plain error, though not brought to the attention of the trial court, when its conscience is shocked, when it is convinced that substantial justice was not done below, and that an unjust, unconscionable result was brought about by the error or errors first raised on appeal. In the instant case we find that substantial justice was done and that no harmful, prejudicial error was committed below.

Judgment affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.