30 N.J. Super. 95 (1954)
103 A.2d 615
SYLVESTER P. MELONE, PLAINTIFF-RESPONDENT,
v.
JERSEY CENTRAL POWER & LIGHT CO., A CORPORATION OF NEW JERSEY, EDWARD J. WALLING AND LEO J. TEARS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1953.
Decided March 12, 1954.
*98 Before Judges CLAPP, GOLDMANN and EWART.
Mr. Abraham Frankel argued the cause for plaintiff-respondent (Messrs Frankel & Frankel, attorneys).
Mr. Mark Townsend argued the cause for defendants-appellants Jersey Central Power & Light Co. and Edward J. Walling (Messrs. Townsend & Doyle, attorneys).
Mr. William J. O'Hagan argued the cause for defendant-appellant Leo J. Tears (Messrs. Reid, Kelly and Flaherty, attorneys).
The opinion of the court was delivered by CLAPP, S.J.A.D.
This, in the main, is a fact case. A car driven by defendant Leo J. Tears, in which plaintiff was a passenger, ran into the rear of a stalled truck of defendant Jersey Central Power & Light Co., driven by defendant *99 Edward J. Walling. The verdict was against the three defendants, and they appeal.
The accident happened 4 o'clock Sunday morning on Route 36 at its intersection with Broad Street, Keyport, N.J. The testimony was in conflict as to whether it was raining or drizzling heavily or slightly, and as to the visibility. It was still dark, but at the intersection there were two overhead arc lights and also two traffic lights. Route 36 at that point is a two-lane concrete highway, 20 feet in width, with a macadam shoulder, on each side, of about 12 feet in width. The truck, when stalled, was facing north, right in the way of northbound traffic, with its left wheels at or very close to and parallel with the white center line and with its front wheels at the white stop line at the intersection. The truck had stopped for a traffic light, and the engine stalled and would not start after the light changed. For four to five or six to eight minutes the truck with its crew of five men stood there, a number of cars passing it, before the Tears' car, proceeding northerly, hit it.
Did the court err in denying motions for dismissal and for judgment made by defendants, Jersey Central and Walling? The first matter here is whether there was negligence on the part of these defendants. Tears testified that "there were no lights at all on the back of the truck," though others testified that the tail light was lit. At any event, Tears said he saw the truck and the red reflectors on its rear iron grille.
More serious was the fact that the truck lacked the three flares, which are required by N.J.S.A. 39:3-64 outside of a residence or business district and which Walling knew had to be on the truck. Was the place where the truck stalled, within a residence district; that is (see N.J.S.A. 39:1-1), was it within
"that portion of a highway and the territory contiguous thereto * * * where within any six hundred feet along such highway there are buildings in use for business or residential purposes which occupy three hundred feet or more of frontage on at least one side of the highway?"
*100 To constitute any 600 feet a residence district, there must be, at least, on one side of the street, for example, 10 buildings, each averaging 30 feet front, each on a lot averaging 60 feet front; or, for example, 7 buildings each averaging 43 feet front, each on a lot averaging 86 feet front. A policeman testified that it was a residential district, but on cross-examination it appears clearly that he did not have in mind the statutory definition. Defendant Tears testified that it was a semi-residential district. At any event the testimony, taken with a photograph of the highway at the intersection (the photograph looks north, but Tears said the area "looks pretty much the same in both directions at that point in the highway"), furnished ample evidence upon which the jury could have found that this was not a residential district.
Failure to put out flares was a matter to be considered by the jury in determining whether or not there was negligence. Jones v. Lahn, 1 N.J. 358 (1949). Such is the law even though Tears saw a flashlight with a light "the size of your fist" (other proofs showed it as a heavy portable light with a half-mile beam) which was being waved by a Jersey Central employee 65-75 feet to the rear of the truck. Flares, one in the center of the northbound lane of traffic a hundred feet behind the truck, and another at the left side of the truck, would have been much more indicative of a disabled truck than this waving light was. Further, see Restatement of Torts § 437.
It is urged that the violation of N.J.S.A. 39:3-64 was not an issue in the case as between plaintiff and defendants, Jersey Central and Walling, because the statute had not been pleaded. In the complaint and pretrial order it was alleged by plaintiff that "there were no warning signals of any kind, manual or mechanical, given to advise of the presence of said truck." However, this question need not be considered by us. No objection was taken below either when plaintiff on cross-examination adduced evidence with *101 respect to the matter, or at any other time, and it may therefore be said that the issue was tried "without the objection of the parties." R.R. 4:15-2.
Even more important to the decision here than the matter of flares is the evidence from which the jury could properly have found that the five "pretty husky men," the Jersey Central employees on the truck at the time, could have pushed it from the highway to the "reasonably" level shoulder thereof in the four to eight minutes it stood there before the accident. This proof was accentuated by the fact that the foreman of these men first said that he did not think five men could push the truck off the road and then changed his testimony stating that there would not have been "a great deal of difficulty for five men to push that truck."
So we conclude that fairminded men might reasonably have found negligence on the part of the defendants, Jersey Central and Walling. Indeed that matter is hardly controverted in their brief. The point seriously pressed here is that this negligence was not the proximate cause of the accident.
The argument on the matter of proximate causation is based upon Tears' story. He and plaintiff had left Jersey City at 10:30 P.M. Saturday to spend Labor Day weekend at the shore, endeavoring to look up a friend there. Tears went into two bars (among other places) to find him, but did not recall "exactly" whether he had any refreshments at any of these bars. He did not remember "actually" whether he had any beer or whisky at any of them, but there is "a very good possibility I may have" had something to drink between midnight and 3:00 in the morning. It may have been a highball. At any event, finding themselves unable to secure accommodations at the shore, Tears and plaintiff turned back toward Jersey City in the early morning.
Tears' story was that when he first saw the truck, it was 150 to 200 feet away. His impression then was that it was moving. His second impression was of a man stepping around the right side of the truck to the rear waving the *102 above-mentioned flashlight, "waving me by." The man was about 40 feet from Tears when Tears first saw him. Tears then "pretty much determined" that the truck was stopped. "Not knowing what the conditions were, there was no emergency, no reason to stop." He "started to swing" out to the southbound lane and had gotten the car half-way or three-quarters way over the white center line, so that his headlights were lighting up the road beyond the truck. At that point two men (who, Tears states, had become scared) "definitely" jumped out, jumped out like rabbits, "actually leaped," "started to dodge" into that lane and were then "standing partially in the southbound lane." At other places in the testimony Tears gave versions differing from this slightly: at one place he said one of the men "jumped right out into the middle of the lane and one started to hug the side of the truck"; and at another place he said he was not certain whether they were going across the road or were hugging the side of the truck. At any event, Tears was about "a car length, two car lengths behind the truck" when these two men appeared. To avoid them, Tears "slammed on the brakes * * * and the car started to swerve * * * to fishtail like that on a wet pavement * * * the back was swaying." Before the police court he testified that he turned the wheels into the back of the truck.
Defendants, Jersey Central and Walling, themselves, though they rely on Tears' story, claim that his credibility was completely destroyed. The story that two or one man jumped into the southbound lane was denied. Four members of the Jersey Central crew who testified, all told a story that hardly comported therewith. The testimony as to the fifth member of the crew was that the force of the collision brought the hood of the truck down on his back (he was apparently looking at the engine at the time), and so he undoubtedly was not one of those who so jumped. A photograph of Tears' car after the accident rather indicates that it was hit fairly near its center and that it struck the truck squarely, and not at an angle as it might have if he turned his wheels to the right into the truck. Moreover one Jersey *103 Central employee testified that no part of Tears' auto was in the south lane after the accident.
Here is what the foreman who was waving the light yelled at the time of the accident, and he was corroborated by two other employees: "Fellows here comes another car" (a few cars had already passed), and as it kept approaching he hollered "Look out! This guy isn't going to stop." The foreman testified that Tears "was coming at quite a terrific rate of speed, and I stood out there flagging him with that light until the last moment, and I just jumped out of the way myself." In answer to the question "What did Tears do just before you jumped clear," the foreman replied, "didn't do anything so far as I could see." The foreman did not hear or see any skidding by Tears' car.
There were other doubts cast on Tears' story. He said he was travelling 25 to 30 miles an hour. Yet he drove this 4- to 8-ton truck forward 20 to 23 feet, even though its emergency brake was on, and, besides, did $1,005 of damages to his own car. Then there is another matter. If he turned his wheels to the right and into the truck at the time of the collision so as to avoid the two men, and the rear of his car swerved on the wet pavement, would not the rear thereof have swung to the left, causing him to hit the truck on a much more acute angle than it did?
The question here is whether the matters above-mentioned, on the basis of which the jury could have found negligence on the part of the defendants, Jersey Central and Walling  that is, the failure to have the tail light lit, the failure to place flares on the road, and the failure to push the truck from the road  were the proximate cause of the accident. The argument by defendants, Jersey Central and Walling, is that Tears saw the truck and that in fact the accident is attributable to the two men who jumped into Tears' way, and not to these defendants' negligence.
The evidence here would have justified the jury in finding that the accident occurred in one of three ways: first, in the way Tears stated; second, not because Tears was forced to hit the truck in order to avoid the two men, but simply *104 because he failed to stop his car, even though he saw the standing truck and the waving of the flashlight; or third (having in view, particularly, the testimony of the foreman as to the car coming on at quite a terrific rate of speed without doing "anything"), Tears did not see the truck until he hit it or was practically on it.
As above indicated, the defendants, Jersey Central and Walling, in their brief seem to rely upon the first hypothesis stated. However, also as indicated above, we think it clear that the conflict in the testimony rendered it a jury question as to whether or not two men, or at least one of them, got into the way of Tears' car.
The second hypothesis stated  namely, that Tears saw the truck standing there, and yet smashed head on into it  is quite unlikely unless Tears was intoxicated, or in some state in which, though seeing the truck, his mind did not act to avoid the danger. Are we to assume, as a matter of law, that he was in this state when there is no, or hardly any, affirmative proof to support it? Are we, as a matter of law, to accept part of his story and reject the balance of it? Unless we do so, we must find that it was up to the jury to pass upon the validity of this second theory.
In our view, it could not be decided, as a matter of law, which of the three alternative theories was the true one. That being so, it must be conceded that if on any one of the three theories, the matter of proximate causation was a jury question, then the motions for judgment and for dismissal were properly denied. Upon the first hypothesis above stated  namely, that Tears ran into the truck to avoid the two men  we think it was for the jury to determine whether the negligence in failing to push the truck off the road was a proximate cause of the accident. Upon the third hypothesis stated  namely, that Tears ran into the truck without seeing it  it also became a jury question to determine whether the failure to place flares on the road, the failure to have the tail light lit and the failure to push the truck from the road were not proximate causes of the accident.
*105 Moreover (still looking at the third hypothesis), it could not be said, as a matter of law, that, so far as could reasonably be foreseen, all drivers going north would see the truck standing there and avoid the danger; Tears said "it was a dark night," "raining quite heavily," and plaintiff testified:
"It was raining so hard and it was so black in front of us that I don't know if you could see anything in front of us unless it had a very, very bright light on it."
In that posture of the case, the court should not withdraw from the jury the question whether the negligent status of the truck on the highway was merely a condition under which the accident happened or whether it was a contributory cause thereof. Our law attaches liability not only to the dominating cause, but also to any cause which constitutes at any event a substantial factor in bringing about the injury. Daniel v. Gielty Trucking Co., 116 N.J.L. 172 (E. & A. 1935); Menth v. Breeze Corporation, Inc., 4 N.J. 428, 442 (1950); Restatement of Torts, § 431, 431 comment (d), 439 and 447.
The motions for judgment and for dismissal were properly denied. The defendants, Jersey Central and Walling, next claim that error was committed in charging the jury as to N.J.S.A. 39:3-64, the statute above-mentioned, with respect to flares. The principal point here is that the statute had not been pleaded, but that matter has been discussed above. Furthermore, no objection was made to this portion of the charge. R.R. 4:52-1. Nor is there plain error here of a shocking sort which we should take notice of under R.R. 1:5-3 (c). State v. Picciotti, 12 N.J. 205 (1953).
Defendants, Jersey Central and Walling, then charge that the order of the court denying their motion to set aside the verdict constituted error. However, these defendants did not appeal from that order, and we therefore cannot consider the matter. Besides it cannot be said that the trial court abused its discretion in holding that there was no clear and convincing evidence, or inescapable inference, of contributory negligence on the plaintiff's part or of a lack *106 of negligence on the part of these defendants proximately causing the accident.
Tears on his appeal raises four matters. The first has to do with the court's charge. However, as to this, no objection was taken below until after the jury retired. R.R. 4:52-1. Nor was there plain error here of a shocking sort. R.R. 1:5-3 (c); State v. Picciotti, 12 N.J. 205 (1953), supra. The argument here is over that portion of the charge where, by way of preamble to its discussion of the matter of damages, the trial court said:
"If you find * * * [Tears] guilty of negligence * * * you would then go to the question of damages."
The ground of appeal is that the element of proximate causation was omitted from the sentence. However, it had been sufficiently covered in the charge three sentences before that, and we therefore find no error and clearly no shocking error. A charge must be considered in its entirety, and not piecemeal.
Another ground of appeal goes to a question asked a policeman who arrived two minutes after the accident. The policeman had just testified, without objection, that there was "a man to the rear of the truck [he was making reference to the foreman, as above stated] handling a light somewhat like this." The question to which Tears' attorney took objection (that is, assuming that he impliedly adopted the objection made by the attorney for the other defendants) was: "And how far back from the truck was that?" In substance no answer was made to this except a repetition of what had just been said  the only modification therein being this, namely, that the policeman said that the man with the light was standing to the rear of "Tears' vehicle" not to the rear of the truck. Since Tears' car had just run into the truck and was clearly behind it, this was a rather immaterial variation on the proof that was in, and it could not be said that there was any substantial injustice here. R.R. 1:5-3 (b).
*107 Next Tears claims that the court should have granted a mistrial when the attorney for the other defendants asked Tears whether he had been convicted in a local magistrate's court as a result of this accident. No answer was given to the question, and the court instructed the jury to "disregard that entirely." Whether or not a mistrial should be granted is a matter resting in the discretion of the court. State v. Witte, 13 N.J. 598 (1953). There is no abuse of discretion here.
The final matter is that the court left it to the jury to determine whether this was a residential district within the meaning of N.J.S.A. 39:1-1, when it should have decided as a matter of law that it was not a residential district. No objection was taken to this portion of the charge even after the jury retired, and there is no shocking error within R.R. 1:5-3 (c). State v. Picciotti, supra.
Affirmed.
EWART, J.A.D. (dissenting).
I am in accord with the majority opinion in affirming the judgment against the defendant Tears, but cannot subscribe to the conclusion reached in that opinion with respect to defendants Jersey Central Power & Light Co. and Edward J. Walling.
In addition to the facts set forth in the majority opinion, it may be mentioned that the concrete highway upon which plaintiff and the defendant Tears were riding was straight for approximately one-half mile before they reached the point of collision; that the truck of the Power & Light Company, photos of which are included in the appendix, was a large closed-body emergency truck weighing eight tons; that the back of the truck was equipped not only with a tail-light but with two or more reflectors; that while defendant Tears, the driver of the car in which the plaintiff was riding, said he did not see any red tail-light burning, yet the overwhelming weight of the proofs from the other witnesses was that the tail-light was burning; and that this eight-ton truck, with the hand brake set, was driven by the force of the collision a distance of 23 feet forward.
*108 The Power & Light Company truck had been called out during the night time on an emergency job; defendant Walling was the driver of the truck; one Bertoncin was the acting foreman, and there were three additional men in the crew. Prior to the time of the collision, the emergency job upon which the crew went out had been completed or partially completed and flares from the truck were set out at the scene where the emergency repairs had been done, so that when the truck stalled at the place where the collision afterwards occurred there were no flares left on the truck that might have been set out if required under the provisions of N.J.S.A. 39:3-64. The truck had stopped for a red light at the Broad Street intersection and when the driver Walling was unable to get it started again upon the light turning green, Bertoncin, the acting foreman, immediately took an electric flashlight, casting a beam for approximately half a mile, and went to a position from 65 to 75 feet on the roadway to the rear of the truck to warn approaching traffic. And he was still there warning approaching traffic with his light when the automobile in which plaintiff was riding passed him and collided with the rear of the truck. With the truck stalled on its right-hand side of the white center line of the state highway, there still remained approximately 22 feet of concrete and paved shoulder to the left of the truck affording ample space for the Tears car to have passed the truck, and there was no proof of the presence of any other automobile that would have interfered with Tears in passing to the left of the truck.
Tears and the plaintiff had left Jersey City at about 10 o'clock the night before the accident, had driven to Leonardo, stopped at various places along the shore, including two or more taverns, and were returning to Jersey City when the accident happened about 4:00 A.M. Tears was driving and the plaintiff was riding in the front seat beside him. The plaintiff testified he did not see the standing truck until he was about ten feet from it. Tears testified that he first saw the truck standing under the arc light when he was from 150 to 200 feet behind it and that he saw the man in the *109 highway waving the flashlight when he was still at a point from 75 to 125 feet to the rear of the standing truck. Notwithstanding, he smashed into the rear of the truck and drove it forward a distance of 23 feet. The proofs were uncertain as to whether or not the accident occurred in a business or residential district within the meaning of N.J.S.A. 39:1-1.
Defendants Jersey Central Power & Light Co. and Walling moved for a dismissal of the complaint at the conclusion of plaintiff's case and for judgment for the defendants at the close of the entire case, and both motions were denied. Thereafter those defendants moved to set aside the verdict and that motion was likewise denied.
It is, of course, fundamental that before liability may be fastened upon a defendant in a tort action such as this, it must be established by the proofs (1) that the defendant was guilty of negligence, and (2) that the defendant's negligence was a proximate cause of the accident. And plaintiff carries the burden of establishing by the proofs the existence of those two conditions.
Dealing first with the question of defendant's negligence: Unless the actor be a child or an incompetent person, the standard of conduct to which he must conform to avoid being charged with negligence is that of a reasonable man under like circumstances. 2 Restatement, Torts, § 283. Perfection of conduct is humanly impossible and the law does not exact an unreasonable amount of care from any one. The degree of diligence which one is bound to observe in the performance of his common law duty to use care to prevent injury to others is ordinary or reasonable care. 38 Am. Jur., Negligence, § 29. Negligence is the omission to do something which a reasonable man, guided by the considerations which ordinarily regulate the conduct of human affairs, would do, or the doing of something which a prudent or reasonable man would not do under the existing circumstances. Id., § 30. Negligence exists only with relation to a duty to exercise care. Actionable negligence is based upon the breach *110 of a duty on the part of one person to exercise care to protect another against injury. Id., § 12
In the light of these long-recognized principles respecting negligence, can it be said that the defendants Jersey Central Power & Light Co. and the driver Walling failed, under the circumstances and conditions then existing, in any duty which a reasonable man would owe to others? It is to be remembered that the stalled truck was standing on its right-hand side of the center line; that the road where the accident occurred was straight; that there was approximately 22-foot clearance of paved roadway between the left-hand side of the truck and the curb at the edge of the street; that the scene was illuminated by overhead arc lights and by traffic lights; that even if we reject the testimony of a number of witnesses that the red tail-light on the truck was burning and accept the statement of the defendant Tears that he did not see it, still the rear of the truck was equipped with two or more reflectors; and that in addition to all of these things, Bertoncin, the acting foreman of the crew on the truck, immediately went some 65 to 75 feet to the rear of the truck, stood in the roadway, and used an electric light to warn approaching vehicles.
In Seibert v. Goldstein Co., 99 N.J.L. 200 (E. & A. 1923), under much more hazardous conditions than existed in the case at bar and with visibility during a snowstorm cut down to a few feet, there was a collision between the front of plaintiff's car and the rear of defendant's truck which had come to a stop upon the highway. In sustaining a verdict against the defendant the only negligence found by the court was that under the circumstances then existing one of the men on the defendant's truck should have taken a light or lantern a reasonable distance to the rear of the truck for the purpose of warning approaching vehicles. That is exactly what the defendants did in the case at bar.
The majority opinion suggests that the five-man crew on the truck should have pushed it over to the shoulder of the highway and that failure to do so might be construed as negligence. If that were attempted, it would still be necessary *111 to have one of the five men behind the steering wheel to guide the truck and it would certainly seem proper that Bertoncin, the acting foreman of the crew, should stay behind the truck with his light to warn approaching vehicles. That would leave three of the five-man crew to push an eight-ton truck. It would seem to me quite apparent that three men could not move such a heavy vehicle at all and that, furthermore, under the conditions then existing and with the safeguards that had already been taken, it would be unreasonable to conclude that negligence could be said to exist for failure to push the truck to the shoulder of the road after it had been standing on the highway from five to eight minutes.
The majority opinion also suggests that negligence might be found to exist because of the failure to put out flares. More on this subject under the head of proximate cause dealt with below, but at this point it may be said that there was no proof upon which to base the conclusion that flares should have been put out under the provisions of N.J.S.A. 39:3-64 because it was not established that the scene of the accident was not in a residential district.
Unless we are to cast aside the rule that the standard of care required to avoid a charge of negligence is merely that degree of care and foresight which a reasonably prudent man would be expected to use under like circumstances, and to set up in its place as a standard perfection of conduct that would avoid such accidents under any and all conceivable circumstances, I think the proofs in this case, taken in the light most favorable to the plaintiff, fail as a matter of law to establish negligence on the part of the defendants Jersey Central Power & Light Co. and Walling.
Secondly, as to the proximate cause of the accident: Conceding for the purpose of the argument that defendants were guilty of negligence, or that the proofs sufficed to justify the jury in inferring negligence on the part of the defendants, the question remains as to whether the acts or omissions of the defendants constituted the proximate and efficient cause of the accident. In Powers v. Standard Oil *112 Co., 98 N.J.L. 730 (Sup. Ct. 1923), affirmed 98 N.J.L. 893 (E. & A. 1923), defendant's truck was parked on the wrong side of the street. A nine-year-old child ran from behind the truck and in attempting to cross the street collided with the automobile of one McGuire and suffered injuries which resulted in death. The jury brought in a verdict against the truck owner and a verdict of no cause of action in favor of the defendant McGuire. On appeal, the defendant Standard Oil Company argued that the proximate cause of the accident was the manner in which the McGuire auto was driven and not the obvious dereliction of the defendant truck owner in parking the truck on the wrong side of the street in violation of the Traffic Act, and the only question before the court on appeal was whether the conceded dereliction of the defendant truck owner was the proximate cause of the accident. In reversing the judgment against the truck owner, the court remarked that the parked truck was an immobile, inactive instrumentality, and incapable in its inactive condition of perpetrating harm or damage to any one. Also that the parked truck was perfectly obvious to the wayfarer and imposed upon him or her as a consequence the necessity for corresponding care or precaution in the use of the highway. And quoting from Menger v. Laur, 55 N.J.L. 205 (Sup. Ct. 1893), the court said:
"`If the faulty act of the plaintiff simply presents the condition under which the injury was received, and was not in a legal sense a contributory cause thereof, then the sole question will be whether, under the circumstances * * * in which the injury was received, it was due to defendant's negligence.'"
And the court further remarked:
"The efficient proximate or intervening cause in such a situation is tantamount in law to the force or operating factor, without which the accident could not have happened. Such a power must have been active, operative, and carrying and containing within itself the possibility and potentiality for harm; as in the famous Squib case, 2 Wm. Blackstone, 892; * * *."
*113 "* * * In the case at bar it was unimportant whether the defendant's car rested legally or illegally upon the street, since its obstruction to the vision of the crossing pedestrian, or to the driver of a moving car upon the roadway, would, under the testimony, be equally effective. In either event, its impotence for harm or damage, as an innocuous, immobile instrumentality, must be manifest, since in both situations it simply presented a patent condition, and not an operating, efficient, or proximate cause, which can be said to contain by its activity, that potentiality for harm or damage, which furnishes the test upon which the rule of liability in this character of tort-feasance is predicated."
In Monaco v. Comfort Bus Line, Inc., 134 N.J.L. 553 (E. & A. 1946), the bus of the defendant, loaded with passengers, was crossing a bridge over the Passaic River when without explanation it suddenly turned at a 45° angle, mounted the curb, crossed the pedestrian sidewalk, crashed through the bridge railing and plunged into the river below. A number of the passengers were killed in the accident. The Counties of Bergen and Passaic, which had constructed the bridge jointly, as well as the bus company, were made defendants in a subsequent suit, the theory upon which the counties were joined being that the bridge was improperly constructed and had not been built in accordance with the customary standard for the construction of such structures. The court held that in order to recover against the counties the plaintiffs carried the burden not only of proving negligence on the part of the defendants, but also "to prove affirmatively that such negligence, if any, was a proximate cause of the accident"; that without doubt the primary cause of the accident was the action of the bus operator in losing control of the vehicle, or some other unexplained reason, and that:
"Any failure to provide adequate curbing or railings was not a cause but a fortuitous condition. Under the proofs adduced, the negligence complained of [against the counties] was not even a concurring cause of the accident."
In Jones v. Lahn, 1 N.J. 358 (1949), plaintiff's truck had come to a stop on the right-hand side near the edge of the concrete highway which consisted of four concrete lanes with a safety isle in the center, plaintiff's truck-driver having *114 stopped to render assistance to another parked truck. The night was clear and the visibility good. Lights were lit on the parked truck. No flares were put out by the truck-driver as required by the statute. Defendant's truck smashed into the rear of the plaintiff's truck after the latter truck had been standing still on the highway for some three or four minutes. A verdict in favor of the plaintiff for damage to the standing truck was upheld notwithstanding plaintiff's failure to put out flares as required by the statute.
It has been said that proximate cause is to be determined upon mixed considerations of logic, common sense, justice, policy and precedent. Powers v. Standard Oil Co., supra, 98 N.J.L., at page 734; 38 Am. Jur., Negligence, § 53; that proximate cause is an efficient cause; that proximate cause is a superior or controlling agency as distinguished from those causes which are merely incidental or subsidiary to such controlling cause; that it is the dominant cause, not the one which is incidental to that cause; and that negligence which merely furnishes the condition or occasion upon which injuries are received, but does not put in motion the agency by which the injuries are inflicted, is not the proximate cause thereof. The rule is that where an efficient adequate cause for injuries has been found, it must be considered as the true cause, unless another, not incident to it, but independent of it, is shown to have intervened. 38 Am. Jur., Negligence, § 54.
Liability is not imposed merely because it is possible to trace a connection between a negligent act or omission and an injury. The injury must be the legitimate sequence of the thing amiss before liability may be imposed. Id., § 56. And the mere concurrence of one's negligence with the proximate and efficient cause of a disaster will not impose liability upon him. Id., § 63.
In the case at bar, it seems to me apparent that the dominant, controlling and proximate cause of the accident in which the plaintiff received injuries was the entirely reckless and heedless manner in which Tears operated the car in which the plaintiff was riding, and that the presence of *115 defendant's truck on the highway merely presented the condition under which the injury was received and was not in a legal sense a contributory cause thereof, Powers v. Standard Oil Co., supra, or that the presence of the truck on the highway was but a fortuitous circumstance or condition and was not the efficient or proximate cause of the accident. Monaco v. Comfort Bus Line, Inc., supra.
The absence of flares on the highway is entirely without significance in view of Tears' testimony that he first saw the standing truck, under the arc light, when he was from 150 to 200 feet away and that he saw the man in the highway waving the light while he was still from 75 to 125 feet back of the truck. The plaintiff himself, who was in the front seat beside the driver, testified he never saw the truck until he was within perhaps 10 feet of it. The testimony of both Tears, the driver, and the plaintiff passenger seems incredible. If Tears saw the truck when he was from 150 to 200 feet away, as he said he did, or if he saw the man waving the light at a distance of 75 to 125 feet back of the truck, as he likewise testified he did, then the occurrence of the accident is inexplicable. On the other hand, if neither the plaintiff nor his driver Tears saw the truck standing under the arc light and under the traffic lights, nor the reflectors on the back of the truck, nor the man waving the flashlight in the roadway at a distance of 75 feet or more at the rear of the truck, then the explanation would seem to be either that they were dozing or their senses had been numbed from other causes. In either event, I think the proximate and efficient cause of the accident was not the fact of the truck standing on the highway but the manner in which the Tears automobile was being operated.
I vote to reverse the judgment against Jersey Central Power & Light Co. and against Walling.