32 N.J. Super. 168 (1954)
108 A.2d 11
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALBERT HERMAN LANDEROS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 8, 1954.
Decided September 24, 1954.
*170 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. William E. Ozzard, Assistant Prosecutor of Somerset County, argued the cause for the respondent (Mr. Leon Gerofsky, County Prosecutor).
Mr. George Pellettieri argued the cause for the appellant (Mr. J. Mercer Burrell, attorney).
The opinion of the court was delivered by FRANCIS, J.A.D.
Appellant Landeros was convicted by a jury under an indictment containing three counts. The first charged assault with intent to rape, the second, atrocious assault and battery, and the third, assault and battery. All of the counts stemmed from the same single occurrence involving the one complainant. Following a charge to the jury that under the proof they should decide whether "this defendant was guilty of all of" the charges "or any of *171 them", a general verdict of guilty was returned. Subsequently the trial court sentenced Landeros to an indeterminate term in the Bordentown Reformatory on each of the counts of the indictment. He provided, however, that the terms should run concurrently. This appeal was then taken.
The indictment was filed May 12, 1953. At the outset, attention is directed to the fact that as of January 1, 1952, assault and battery was reduced from a crime to a disorderly persons offense. N.J.S. 2A:170-26; State v. Maier, 13 N.J. 235 (1953). Whether it should have been included as one of the counts and the jury permitted to pass upon it is not raised by appellant and in view of our determination on the whole case the problem need not be decided at this time.
Appellant urges that it was error to instruct the jury that verdicts of guilty could be returned on all of the counts because to convict a person of a particular crime and then to convict him separately on the same facts of a lesser offense which constitutes a part of the major or more serious one, would be to convict him of two or three offenses when he was guilty of one. This contention is sound and we agree that it was improper to authorize the fractionization of the criminal liability. State v. Labato, 7 N.J. 137, 145, 146 (1951); State v. Perrella, 21 N.J. Super. 550 (App. Div. 1952).
A verdict of guilt of the highest offense charged eliminates need for deliberation upon other counts charging lower offenses which are components of the higher. Such counts should be considered seriatim only in the event of progressive downward acquittals.
It does not follow from what has been said that a reversal must be ordered. The State points out that no objection was interposed to the charge as required by R.R. 1:5-1(a) and that accordingly review cannot be invoked. Appellant concedes this, but asks us to notice it, under the qualification imposed upon the rule, as a plain error affecting his substantial rights. When resort is had to the plain error rule, we are mindful of the mandate of the Supreme Court in State v. Picciotti, 12 N.J. 205 (1953), that it is designed *172 to permit "the appellate court to consider plain error, though not brought to the attention of the trial court, when its conscience is shocked, when it is convinced that substantial justice was not done below, and that an unjust, unconscionable result was brought about by the error or errors first raised on appeal." (12 N.J. at 211.)
In the present case, if the jury had been limited to a determination of the individual counts on the progressive basis indicated, and a general verdict of guilty had been returned without any specification with respect to counts, the verdict would have been valid and sentence could be imposed on the most serious charge, assault with intent to rape, at least so long as there was evidence in the record to support the submission of that issue to the jury for determination. Cf. State v. Dunlap, 103 N.J.L. 209 (Sup. Ct. 1927); State v. Huggins, 84 N.J.L. 254 (E. & A. 1913). That there was such evidence is not disputed.
However, since there was but one crime committed and it was improper to authorize the jury to find guilt on the individual component parts of the highest offense charged, manifestly only one sentence can be inflicted. The trial court imposed three separate indeterminate but concurrent reformatory sentences. This was manifest error within State v. Picciotti, supra, and cannot stand. The State contends that since the error affects the sentence and not the matter of guilt, the appropriate remedy is not reversal of the conviction but a remand to the trial court for the correction of sentence, under R.R. 1:5-1(c). The difficulty with the contention is that even though as the result of the application of this rule a single sentence would be imposed on one conviction, the record of three convictions would remain. Thus he would be branded as a multiple offender where his guilt was of a single crime. Under the circumstances the required remedy is a reversal of the convictions on the counts for atrocious assault and battery and assault and battery, and such will be our order.
Appellant cites also certain alleged errors in evidentiary matters and a further defect in the charge of the court.
*173 With respect to the evidential problems, it is asserted that the court erroneously permitted (1) a State's witness to express an opinion as to Landeros' guilt, and (2) the prosecutor to inject into the trial evidence susceptible of the inference that Landeros was under arrest on a similar charge at the time he was identified as the assailant in this case.
The opinion evidence as to the accused's guilt came into the trial in this way: The State had called Captain Angelo Colacci of the Bound Brook Police Department, apparently primarily to corroborate the identification which the victim had made of Landeros in a police line-up in Elizabeth about six weeks after the assault. On cross-examination defense counsel asked:
"Q. Did you have any doubts in your mind about this man's guilt?
A. Is that a question? Do you want me to answer it?
Mr. Gerofsky: Answer the question.
The Witness: He is as guilty as Mrs. Murphy's pet pig. Do you want to ask me why?
Q. No, then you are very convinced about that?
A. You asked me for my opinion and I just answered my opinion.
Q. You do have some feelings in the matter?
A. I have no feelings in the matter."
It is argued that the prosecutor, knowing that the inquiry as to the opinion of the witness was in violation of the rules of evidence, as indeed it was, should not have interrupted and ordered the witness to answer the question; further, it is said that the trial court on his own motion should have excluded the question as improper.
So far as the prosecutor is concerned, an inference of at least as much weight as that suggested by appellant is that he felt he was dealing with a talkative, fractious witness, and that when he directed an answer to the question, he was engaged in an effort to curb Colacci and obtain a responsive answer for defense counsel.
Moreover, and this applies to the inaction of the court as well, the questions and answers recited must be looked at in their context. Identification of the accused was a crucial problem. The complainant had testified that she saw Landeros' face on the night in question; her identification of *174 him in the police line-up was positive and convincing. Her conduct in making the identification was corroborated by Colacci and a deputy warden of the Union County jail. And Landeros himself in his testimony described her appearance, conduct and the manner of the identification almost exactly as she outlined it. Colacci's testimony on direct and cross-examination centered largely about the identification, with defense counsel undertaking to throw doubts upon it and suggesting that Colacci might have influenced complainant to select Landeros. The cross-examination which immediately preceded the criticized questions and answers follows:
"Q. You did assist this lady in some way in this case, did you not?
A. I didn't assist her in any way at all, I asked her, when I took her to the line-up in Elizabeth, I said to her, `Be positively sure because if you pick the wrong man it is going to make a lot of more work for me.' That is what I told her.
To me this was only another case and it didn't mean anything to me  this man here, this defendant  and he never done me no harm at all. I had no reason to prosecute an innocent man.
Q. Did you have any doubts as to his innocence?
A. I don't get that."
Then the examination continued as quoted above.
In view of the nature of the examination, we do not feel that the court was under a mandatory duty to exclude the question even though it was an improper one. Defense counsel by asking it indicated a waiver of the rule against such opinion evidence. Interjection by the court was a discretionary matter and in the particular circumstances we cannot say that it was mistakenly exercised.
Furthermore, no motion was made to strike the indecorous answer given by Colacci on the subject of guilt; nor was any request submitted to the court to advise the jury that the opinion of a witness as to the ultimate fact of guilt was not in anywise to influence them in their deliberations since that determination was exclusively theirs on the evidence.
On the subject of the improper admission of evidence of Landeros' arrest on a similar charge, the record discloses that the matter came into the trial on the cross-examination of Colacci by defense counsel. On direct examination of the *175 witness, the State had simply proved the identification of the accused at the Union County Jail. No effort was made at all to show anything beyond the fact that the incident took place in the jail. On cross-examination inquiry was made as to whether Colacci had been at the jail before the date in question. On the witness' conceding that he was there about two weeks earlier, he was asked for "the purpose" of his trip "over there." And he replied that he had been informed by the Rahway police that they had arrested a colored man for attempted rape. So on March 9 he took the complainant to Elizabeth. However, a line-up could not be arranged and she was not allowed to see any suspect that day.
The statement about the arrest, which came out on defense counsel's questioning, was not made the subject of any motion to strike nor any request to the court to instruct the jury to disregard it. And when Landeros was testifying on direct examination, he was asked how he happened to be in jail in Union County in March and he said he had been charged with assault.
No objection, or motion to strike, or request to charge having been made in connection with this arrest, we have concluded after a consideration of all of the circumstances that a proper basis for the application of the plain error rule does not exist. Cf. State v. Rhams, 14 N.J. 282 (1954); State v. LeFante, 14 N.J. 584, 595 (1954).
Finally, a sentence of the court's charge is singled out for attack, the argument being that the accused was thereby deprived of his right of counsel. The context containing the allegedly offending statement is:
"You are the judges of the facts in the case. The testimony that you have heard here you must judge. It is not up to counsel and it is not up to the court to decide what the facts are. That is your full province and anything that either counsel or the court may say about the facts should not sway you one way or the other. Your impartial consideration of all the evidence in the case is what is required of you."
The italicized sentence is the one involved. Appellant argues strenuously that in effect the jury was told thereby to ignore *176 any discussion of the facts by counsel and that such instruction destroyed his right to the assistance of counsel in violation of Article I, par. 10, of the Constitution of 1947.
We agree that it would be error for a trial court to charge the jury to "pay no attention to any remarks or statements made by counsel" in summation. State v. Gutterman, 20 N.D. 432, 128 N.W. 307 (Sup. Ct. 1910). However, although the language is not as clear as it might be and although we think that such language should be avoided, when considered in the full context of the charge, we cannot say that in the absence of objection by counsel the sense of the instruction so plainly constitutes the deprivation of counsel as to justify resort to the plain error rule. The word "sway" in association with the balance of the charge, particularly with the portion advising the jury that they were the judges of the facts and that the determination of the facts was their "full province," is susceptible of the conclusion that the jury was not to be swayed from their duty to decide the facts by any statements of counsel.
We do not doubt from a study of the whole charge that the court had no such intention in employing the language criticized as is imputed by appellant. If any such impression had been stimulated in the mind of counsel at the time, an appropriate objection unquestionably would have evoked amplification of the instruction so as to remove any lingering apprehension on the subject. Failure to adhere to R.R. 1:5-1(a) in the setting in which the matter appears in the record disposes of the problem. State v. Picciotti, supra; State v. Manno, 29 N.J. Super. 411 (App. Div. 1954).
For the reasons stated the conviction of assault with intent to rape is affirmed, but the convictions and sentences on the two other counts are reversed.
JAYNE, J.A.D. (dissenting).
My associates have resolved to favor the affirmance of the conviction of the defendant for the commission of an assault with intent to rape. From that conclusion I desire to record my dissent.
*177 The medley of irregular occurrences manifestly prejudicial to the defendant is recognized in the majority opinion, but such injurious grievances are obviously minimized for the principal reasons that if segregated and measured separately, none materially impaired the substantial rights of the defendant, and that timely and formal objections were not interposed on behalf of the defendant.
Assuredly the defendant possessed the fundamental right to a fair and unemotional trial. Two occurrences at the trial may be selected to illustrate the improprieties. The irrelevant (perhaps imprudent) question was propounded to the witness Colacci, captain of police, by defendant's attorney, viz: "Did you have any doubts in your mind about this man's guilt?" The witness inquired of the examining attorney, "Is that a question? Do you want me to answer it?" Before the attorney of the defendant responded, the prosecutor injected the instruction: "Answer the question." The witness answered, "He is as guilty as Mrs. Murphy's pet pig." From my courtroom experience I can understand the impressiveness and devastating consequence of that amusing answer. It was probably the most notorious, memorable, and transcendent episode of the trial.
The other conspicuous example to which I refer is an instruction embodied in the charge to the jury. It is quoted in the majority opinion. Of what avail to a defendant is his recognized right to the aid of an attorney if the jury is instructed as a matter of law that "anything that either counsel * * * may say about the facts should not sway you one way or the other"?
It must be noticed that the instruction pertains to any and all statements that counsel may have made "about the facts" and admonishes the jurors not to permit any such statements to "sway" them, that is, to incline or influence them "one way or the other." I adopt Webster's definition of the meaning of the word "sway."
I concur in the belief that the trial judge did not intend to deliver such an instruction, but it is the faulty deliverance, not the invisible and incongruous state of mind of the judge, *178 that reaches the ears and minds of the jurors. To imagine in this case that the jurors divined the intended but unexpressed instruction is an extravagance of conjecture in which I cannot afford to indulge.
It is my conclusion that the prejudicial impulse of all of the so-called irregularities during the trial, considered and appraised collectively and in totality, effectually deprived the defendant of a fair trial notwithstanding the absence of meritorious objections. I vote to reverse all of the convictions here under review.