101 N.J. Super. 519 (1968)
245 A.2d 30
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
SIDNEY JEFFERSON, ELIZABETH JEFFERSON AND JOAN L. JEFFERSON, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 13, 1968.
Decided June 24, 1968.
*521 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mrs. Miriam N. Span, Assistant Deputy Public Defender, argued the cause for appellants (Mr. Peter Murray, Public Defender, attorney).
Mr. Edward J. Phelan, Assistant County Prosecutor, argued the cause for respondent (Mr. Vincent Panaro, County Prosecutor, attorney).
The opinion of the court was delivered by COLLESTER, J.A.D.
This is an appeal by defendants Sidney Jefferson, Elizabeth Jefferson and Joan Jefferson from a judgment of conviction following a trial on an indictment charging them, together with one Roy Jefferson, with the crime of assault and battery upon a police officer in violation of N.J.S. 2A:90-4. The indictment was served as to Roy Jefferson at the trial because he was unavailable. Sidney and Roy Jefferson are brothers. Elizabeth Jefferson is the wife of Sidney and Joan Jefferson is the wife of Roy.
The State's evidence disclosed the following facts. Shortly after 3 P.M. on October 16, 1966 State Trooper Charles *522 O'Connor, who was patrolling on the New Jersey Turnpike, received a radio call initiated by Trooper Philip Fink in New Brunswick requesting assistance in stopping a white Chevrolet automobile which was being driven southbound on the turnpike at an excessive rate of speed. A short time later O'Connor observed the speeding Chevrolet approaching and signaled it to stop. The driver swerved the car and continued on without stopping. O'Connor pursued the car for over three miles during which it attained a speed of over 90 m.p.h. When the Chevrolet reached the Hightstown interchange its passage was blocked by two buses parked on the right shoulder of the highway and heavy traffic congestion in the southbound lanes. Defendant Sidney Jefferson, who was driving the Chevrolet in which the other defendants and Roy Jefferson were passengers, pulled to a stop with the car straddling the medial strip and the fast lane. O'Connor stopped his car behind the Chevrolet, alighted, and called several times to the driver to step out. When Sidney Jefferson failed to respond the trooper walked to the driver's side of the car, where the window was open, and told Sidney to come out and to produce his driver's license and registration certificate. When Sidney failed to comply the trooper opened the door and ordered him out. When Sidney finally came out he put his hand in his back pocket, which prompted the officer to seize his hand, push him against the car and search him.
Roy Jefferson, who was seated in the front seat of the car alighted on the roadway side and began to yell at the trooper. Concerned that Roy might be struck by the traffic, O'Connor left Sidney and went into the highway, took Roy by the arm, and persuaded him to walk towards the medial strip. The trooper heard Sidney call out, "Don't do it Roy, don't do it." Whereupon Roy struck O'Connor in the eye with his fist. The trooper testified that as he was attempting to handcuff Roy, the two women got out of the car and together with Sidney punched, scratched and grabbed him. While he was being attacked Trooper Fink arrived on the scene and assisted O'Conner in restraining the defendants. *523 Edward Kozabo, a Cities Service employee who was servicing a Trailways bus which was parked on the shoulder of the turnpike, and James Gallagher, the bus driver, witnessed defendants' assault upon O'Connor and crossed the turnpike to assist him. However, at this point Trooper Fink arrived and their services were not needed. During the attack O'Connor sustained a cut over his eye, a black eye and various scratches.
The defendants gave a different version of the incident. Sidney Jefferson testified he was not speeding on the turnpike, that he didn't see either Fink or O'Connor signal him to stop because of poor visibility due to the weather, and that he stopped when he saw the light of the police car behind him. He said the trooper opened his car door, grabbed him by the shirt, pulled him out of the car and searched him. Sidney testified that his brother Roy, who was asleep on the front seat, awoke and tried to get out of the car but was forced back into it by the officer. He said O'Connor bumped his head on the car door while shoving his brother Roy back into the seat. The defendants denied that any one struck O'Connor and testified that the two women never got out of the car until Fink arrived and their husbands were handcuffed.

I
Defendant Sidney Jefferson contends that the trial court erred in denying a motion for a mistrial made following cross-examination by the prosecutor which elicited from this defendant an admission that he had refused to give a statement to the police while in custody.
The alleged reversible error occurred when Sidney was being cross-examined as to testimony he had given of alleged police brutality suffered by his brother Roy at police headquarters after their arrest. Sidney testified that a detective questioned both him and his brother. Thereafter, the following cross-examination took place:

*524 "Q. You are positive that investigator Conrad didn't tell you about your civil rights and that you and your brother refused to give a statement?
A. I can't recall.
Q. Did you refuse to give a statement?
A. I did not give a statement.
Q. You refused to give a statement?
A. Yes."
Defense counsel moved for a mistrial on the ground that it was improper for the prosecutor to ask whether or not a defendant had refused to give a statement to the police. The trial judge, out of the presence of the jury, implicitly acknowledged that such interrogation was improper but denied the mistrial motion. The judge also said he would make no comment to the jury concerning the impropriety of such question because he "might compound the problem."
It seems clear that the questions propounded by the prosecutor were improper. In Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) the court stated:
"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege [to remain silent] when he is under police custodial investigation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation. Cf. Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) * * *" (at p. 468, fn. 37, 86 S.Ct., at p. 1625; additional citations omitted).
Thus, failure or refusal by an accused to give a statement while in police custody which might give rise to an inference of guilt is now accorded federal constitutional protection based on the Fifth Amendment privilege against self-incrimination.
The real issue in this case is whether the improper interrogation which revealed defendant's refusal to give a statement constituted prejudicial or harmless error.
In Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme *525 Court held that the determination of whether a conviction of crime should stand when a state has failed to accord federal constitutionally guaranteed rights to a defendant is a federal question. The court laid down a rule that in order for an error involving the denial of a federal constitutional right to be held harmless in a state criminal case, the reviewing court must be satisfied beyond a reasonable doubt that the error did not contribute to the defendant's conviction. In so fashioning a harmless-constitutional-error rule the court declined to adopt a rule that all constitutional errors, regardless of the facts and circumstances, must always be deemed harmful requiring an automatic reversal of a conviction. It stated that all harmless-error rules, state and federal, serve a useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of a trial, and concluded that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring an automatic reversal. (at pp. 21-22, 87 S.Ct. 824).
In promulgating the harmless-constitutional-error rule the court indicated an intention not to treat as harmless those constitutional errors that affect the substantial rights of a party and iterated with approval (at pp. 23-24, 87 S.Ct. 824) the approach it followed in Fahy v. State of Connecticut, 375 U.S. 85, 86-87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963), where it said, "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."
We conclude that under the Chapman rule, in order to justify a finding that a constitutional error is harmless and a guilty verdict should be upheld, the State must show that (1) the result of the trial would have been the same in the absence of the error, and (2) the error did not constitute a substantial part of the prosecution's case or play a substantial part in the jury's deliberations. See dissenting opinion *526 of Justice Traynor in People v. Ross, 60 Cal Rptr. 254, 429 P.2d 606, 621 (Sup. Ct. 1967).
From our review of the record in the instant case, which is summarized above, it is readily apparent that the prosecution presented a strong case against defendant consisting of direct evidence that he participated in the assault upon the state trooper. O'Connor's testimony was corroborated not only by Trooper Fink but by Kozabo and Gallagher, two disinterested eye-witnesses. The injuries O'Connor sustained in the attack were substantiated by photographs taken on the same day. Following the improper interrogation of the defendant no further reference was made to his refusal to give a statement while in custody, during the course of the trial, including summation of counsel and the court's charge. The other two defendants, Joan and Elizabeth Jefferson, who participated with Sidney Jefferson in the assault upon the officer were found guilty by the jury.
We are not faced here with a factual situation comparable to that in Chapman. In that case the constitutional errors consisted of the prosecutor's comments in summation and the court's instruction to the jury concerning defendants' failure to testify and the adverse inferences to be drawn therefrom. In holding that such errors were not harmless the court placed emphasis upon the prosecutor's continuous and repeated adverse comments. (See Appendix, 386 U.S., at pp. 26-42, 87 S.Ct. 824) The court stated:
"And though the case in which this occurred presented a reasonably strong `circumstantial web of evidence' against petitioners * * * it was also a case in which, absent the constitutionally forbidden comments, honest, fair-minded jurors might very well have brought in not-guilty verdicts. Under these circumstances, it is completely impossible for us to say that the State has demonstrated beyond a reasonable doubt, that the prosecutor's comments and the trial judge's instruction did not contribute to petitioners' convictions. Such a machine-gun repetition of a denial of constitutional rights, designed and calculated to make petitioners' version of the evidence worthless, can no more be considered harmless than the introduction against a defendant of a coerced confession." (386 U.S., at pp. 25-26, 87 S.Ct., at p. 829).
*527 Nor do the facts in this case compare with those in State v. McElroy, 96 N.J. Super. 582 (App. Div. 1967). There the issue of identification of defendant as the person who had committed a robbery was of paramount importance and the facts presented by the State indicated that only he could deny evidence relating to his identification. Following the Chapman rule, we held that we could not say that we were satisfied beyond a reasonable doubt that the prosecutor's improper remarks in summation to the effect that not a scintilla of evidence had been offered on behalf of defendant to contradict the State's eye-witnesses did not contribute to defendant's conviction.
From our examination of the record in the instant case we are satisfied beyond a reasonable doubt that the results of the trial would have been the same if the constitutional error had not been made and that the error did not constitute a substantial part of the prosecution's case. Cf. People v. Hays, 58 Cal. Rptr. 293, 297 (D. Ct. App. 1967); State v. Gosser, 50 N.J. 438, 452-453 (1967) (dictum). Accordingly, we hold that the denial of defendant's mistrial motion does not justify a reversal.

II
All three defendants contend that the trial court erred by instructing the jury on the law of aiding and abetting (N.J.S. 2A:85-14) in addition to that concerning the crime of assault and battery upon a law enforcement officer. Since no objection was made to the charge, as required by R.R. 3:7-7(b), no basis for appellate review exists unless the alleged error in the charge qualifies as plain error. R.R. 1:5-1(a); State v. Corby, 28 N.J. 106, 108 (1958).
Defendants argue that, accepting the State's evidence as true, they were attempting to prevent Trooper O'Connor from taking Roy into custody after the latter struck the officer, and therefore if they were chargeable with any criminal offense, *528 it would be as accessories after the fact (N.J.S. 2A:85-2), for which they have not been indicted.
We are satisfied that this argument lacks merit. The State's testimony shows that Roy Jefferson and all three defendants jointly participated in the assault and battery of the police officer. Thus, each was the aider and abettor of the others and under N.J.S. 2A:85-14 were punishable as principals. We note that at no time during the course of the trial did defendants testify that they attempted to prevent Trooper O'Connor from arresting Roy Jefferson; in fact they each denied that they had participated in the assault.
We hold that the trial court was correct in instructing the jury on aiding and abetting on the evidence adduced in this case. In any event, the charge did not prejudice defendant's substantial rights and did not constitute plain error. Cf. State v. Riley, 28 N.J. 188, 196-197 (1958); State v. Jacques, 99 N.J. Super. 230, 235-236 (App. Div. 1968) and see the comments of the court in State v. Picciotti, 12 N.J. 205, 211 (1953), concerning the application of the plain error rule.
Affirmed.