[Crim. No. 3808. First Dist., Div. Two. Sept. 19, 1960.]

THE PEOPLE, Respondent, v. RICHARD HENRY MITMAN, Appellant.

Richard Henry Mitman, in pro. per., for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Peter T. Kennedy, Deputy Attorneys General, for Respondent.

KAUFMAN, P. J.—This is an appeal from a judgment of conviction entered on a jury verdict finding the appellant guilty of grand theft. On this appeal from the judgment of conviction, the appellant, in pro. per., argues that he was denied a fair trial because: (1) He was denied a speedy trial; (2) he was denied his right to counsel of his choice; (3) he was denied access to certain statements in the hands of the prosecution; (4) prejudicial misconduct on the part of the court; (5) he was improperly precluded from cross-examining the complaining witness; (6) prejudicial error in the remarks of the complaining witness under cross-examination; (7) he was improperly precluded from presenting certain evidence in his own behalf. There is no merit in any of these contentions.

The record reveals the following facts: On January 11, 1959, the complaining witness, one Gerald C. Whitney, a construction superintendent, answered a business opportunities advertisement in the San Francisco Examiner. Whitney met the appellant at the office of Construction Estimators in Albany, California, on January 13, 1959. The appellant told Whitney he was a civil engineer in a high tax bracket; that he had more work than he could handle and needed an assistant in his business which consisted of preparing bids for clients on construction jobs and expediting materials and deliveries. The appellant showed Whitney copies of certain agreements between Construction Estimators and various parties and indicated that these were current active contracts with well-established contracting firms. The appellant indicated to Whitney that the contracts would yield an income of $85,000 in addition to the fixed monthly payments totaling $1,350 from the five contracts. The uncontroverted evidence showed, however, that the appellant knew that several of these clients were in serious financial difficulty. The appellant also showed Whitney an assignment of $7,000 from James F. Seger.

Later that week, on January 16, 1959, Whitney, accompanied by the appellant and one Carl Mohme, went to Paradise and Chico to orient himself to the kind of business done by Construction Estimators. There, they met one Floyd Helm, an attorney representing United Pacific Insurance Company, and one James Seger, a client of appellant. Several days after their return, on January 21, appellant and Whitney had dinner together and discussed the nature of the business. The appellant produced a partnership agreement. After dinner, the two went to the appellant's office where Whitney signed the agreement which provided that Whitney was to

receive a one-half interest in Construction Estimators for $15,000. This amount was to be paid $5,000 in cash and two $5,000 notes payable from the profits of the venture, one in six months, the other in one year. The agreement also provided that the transfer was to be made as of January 31, 1959; that all moneys received after February 1 were to be considered partnership funds; and that a partnership bank account of $1,000 would be opened. Whitney signed the two $5,000 notes about January 24.

Whitney quit his previous employment and reported for work daily in February, 1959. Shortly after he began to work, he was shown a lease-purchase agreement whereby West Coast Engine Company was to sign over a rock-crushing and asphalt plant in Los Angeles to the appellant. The appellant told Whitney that this rock-crushing plant was to be financed by one Ernest Ronin and operated by Mohme. Whitney told the appellant that he would also like to participate in the rock-crushing venture and paid the appellant $5,000. The appellant thereupon agreed to let Whitney participate in the venture.

On February 27, 1959, when Whitney assisted the appellant in billing the various clients of Construction Estimators, Whitney saw that the income as represented by appellant did not exist. The March 1 bank statement also indicated that a $2,300 payment made on February 4 by Mr. Helm and a $333 payment from a client were not deposited into the partnership funds, in violation of the agreement. The appellant explained to Whitney this was work which had been done before February 1, the date of the partnership. Whitney also saw that the other contracts were either delinquent or nonexistent. The partnership was receiving $500 a month while its monthly office expenses were $1,240. Only $50 had been deposited in the partnership bank account. Whitney requested the return of his money and the notes. The appellant left for Sacramento and Whitney never heard from him again.

One Sam Cain, whose contract with the appellant had been used to impress Whitney, testified that he had gone into bankruptcy and paid the appellant only $500. One Thomas Hanna whose contract had also been used to impress Whitney testified that he had a contract with the appellant but had never paid anything because he had never received a bid. Mr. Followell and Mr. James Seger, whose contracts had also been shown to Whitney, testified to the same effect. One Julius

Hauso testified he had also answered the same advertisement as Whitney but after inquiries had decided not to invest.

Carl Mohme testified he also answered the advertisement. After paying $4,000 cash to the appellant and signing notes for the balance of $15,000, Mohme received a half interest in the company on February 1, 1959. In March, Mohme rescinded his contract but never received his $4,000. Ernest Ronin testified that he knew the appellant but had never had any business relationship with him and had never authorized the use of his name in connection with the rock-crushing venture. One Mr. Wright testified he had negotiated with the appellant about the rock-crushing venture and was strongly influenced by Mr. Ronin's strong financial background. These negotiations, however, were never completed.

As indicated above, the only contentions raised are that the appellant did not have a fair trial. There is no question as to the sufficiency of the evidence to sustain the judgment.

The first argument is that the appellant was denied his right to speedy trial. Appellant first argues that the delay between the filing of the original complaint and the preliminary examination was a denial of his right to a speedy trial. The record before us does not contain any of the proceedings prior to the filing of the information on May 29, 1959. The record further indicates that the appellant expressly waived the right to be tried within sixty days after the filing of the information. (Pen. Code, § 1382.) Appellant cites erroneously section 1050 of the Penal Code, which provides only that trial of criminal cases be set not later than 30 days after the entry of the plea. The record also indicates that a part of the delay was to enable the appellant to obtain an attorney. Appellant's claim that the trial court failed to grant him sufficient time to prepare for trial and at the same time granted an undue amount to the People is not borne out by the record. Finally, no objection was made below and it cannot be raised for the first time on appeal (*People* v. *Jordan*, 45 Cal.2d 697 [290 P.2d 484]).

The second argument on appeal is that the appellant was denied the right to defend himself at the trial and that his counsel was incompetent. The record does not support these allegations. On July 6, 1959, after waiving his right to a speedy trial, the appellant informed the court he would be represented by counsel, one Mr. Brown. The following day, July 7, 1959, it became clear that Mr. Brown would not appear and the appellant further expressed his intention to have an

attorney. Thereafter, one Mr. Halley entered the case on behalf of the appellant and thereafter withdrew. On July 30, 1959, one Mr. Bird who defended the appellant, entered the case. It appears he was the counsel of the appellant's choice since a retainer fee was paid.

Appellant, citing *People* v. *Zammora*, 66 Cal.App. 2d 166, 226 [152 P.2d 180], next argues that he was deprived of his right to defend in person and with counsel. In that case, defendants were jointly tried; the seating arrangements in the courtroom were such that the defendants could not freely consult with their counsel during the trial. The record here shows that the appellant was not deprived of the opportunity to consult with his counsel during the trial. Furthermore, the constitutional and statutory right to appear and defend in person and with counsel is not "conjunctive" and does not entitle a defendant to conduct his case personally and at the same time be furnished the advice of an attorney (*People* v. *Linden*, 52 Cal.2d 1 [338 P.2d 397]). As the appellant was represented by counsel, the court could in the interest of expediting the conduct of its business refuse to let the appellant actively participate in the conduct of his own case. (*People* v. *Mattson*, 51 Cal.2d 777 [336 P.2d 937].)

Appellant also argues that he was denied the counsel of his choice, as his choice was to defend himself. The record shows that the appellant had sufficient funds to employ private counsel and did so. The record further indicates that the court was particularly anxious that the appellant obtain counsel because of the technical nature of the case. Whether the defendant should have been granted permission to defend in person was a matter addressed to the sound discretion of the trial court (*People* v. *Wilson*, 46 Cal.App.2d 218 [115 P.2d 598]). We can see no abuse of discretion here and no miscarriage of justice resulted in refusing to allow the appellant to represent himself where the record shows that he was conscientiously represented by counsel and far more ably than he could have represented himself (*People* v. *Marcus*, 133 Cal.App.2d 579 [284 P.2d 848]).

Appellant next argues that he was denied his right to counsel because his counsel was incompetent. This contention likewise finds no support in the record. Rather, the record indicates that appellant's counsel obtained a dismissal of the two counts of violation of subdivision (d) of section 26104 of the Corporations Code, before trial. Furthermore, the handling of the defense by counsel of the accused's own

choice will not be declared inadequate except in those rare cases where his counsel displays such a lack of diligence and competence as to reduce the trial to a "farce or a sham." (*People* v. *Wein,* 50 Cal.2d 383, 410 [326 P.2d 457].) This was clearly not the case here.

■ The next argument is that the appellant was denied his right to inspect the statement of witnesses in the hands of the district attorney. However, the record shows that on August 25, 1959, over three months before the date of the trial, the court with the approval of the district attorney, entered an order giving the appellant the right to inspect or make copies of the statements of the defendant and those who testified at the preliminary hearing and to inspect and make copies of all notes pertaining to the statements. ■■ During the course of the trial, the appellant made a further motion for notes and statements pertaining to Mr. Mohme. The court deferred a ruling until the ruling on the motion became necessary. Mr. Mohme took the stand but the motion was not renewed. On the record, it was incumbent on counsel to renew the request. Not having done so, any right to complain on review has been waived (*People* v. *Gallegos,* 180 Cal.App.2d 274, 277 [4 Cal.Rptr. 413]). *People* v. *Cooper,* 53 Cal.2d 759, 774 [3 Cal.Rptr. 140, 349 P.2d 956], is also relevant. There, the court held that the defendant's blanket request was properly denied as a defendant must show a better cause for inspection than a mere desire for all the information obtained by the People in their investigation.

■ The fourth contention is that various remarks of the trial court constituted prejudicial error. The record indicates that a number of the statements complained of were made before trial. After a careful scrutiny of the record of all of the proceedings, we can only say that the record reveals that the appellant was given a fair and impartial hearing throughout.

■ The fifth contention is that the court refused to allow the appellant to impeach the complaining witness with evidence that on prior occasions the complaining witness had entered into a partnership with another person and was in the habit of bringing criminal actions to extricate himself. The court ruled as follows: "As a part of this case you are entitled to show what knowledge or business experience the complaining witness has; that's perfectly proper. But I don't think you can go into very much detail on these dif-

ferent activities.'' The court then ruled that an offer of proof would have to be made outside the presence of the jury. The court then stated that evidence relating to Mr. Whitney's credibility would be admitted but that details of other business transactions were irrelevant. The ruling was proper. The record shows that evidence was admitted to show that before he paid the $5,000, the complaining witness knew the appellant had misrepresented himself as an engineer and that appellant was permitted to impeach the complaining witness by prior inconsistent statements made in a deposition.

The record indicates that after becoming aware of the above-mentioned matter, Mr. Whitney went to a lawyer to discuss the possibility of legal action to rescind the partnership agreement. During the cross-examination of the complaining witness on this matter, references to defendant's criminal record were elicited by the district attorney. The trial court promptly admonished the jury to disregard such references.

Appellant next argues that the above references to his criminal record, elicited by the district attorney, constituted prejudicial misconduct and requires a reversal of the judgment. As has so often been stated, what constitutes prejudicial misconduct depends on the particular facts and circumstances of each case. Here, the record shows that the jury was properly admonished in each instance and that while presenting his case in chief, the appellant made several references to his criminal record. This identical issue was raised by the appellant previously in *People* v. *Mitman*, 122 Cal. App.2d 490, 495 [265 P.2d 105], and the court held on similar facts that the appellant was in no position to complain. The same is true here.

The final argument is that the court improperly prevented the appellant from introducing evidence on his own behalf by refusing to admit a check made out to and cashed by Mr. Whitney. However, the record indicates that when the appellant took the witness stand, he and his counsel proceeded to go through all the detailed business transactions of Construction Estimators during February, 1959. The court suggested that rather than go through each check laboriously, the entire exhibit be marked for identification. The matter was entered as defendant's Exhibits ''G'' and ''H''. No mention of this check, however, was made during the examination or the cross-examination and the check was admitted as a part of the Exhibit ''G''. Therefore, the record does

not support the contention that the trial court improperly excluded evidence.

No prejudicial error appearing, the judgment must be and is hereby affirmed.

Draper, J., and Shoemaker, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 16, 1960.