86 N.J. Super. 410 (1965)
207 A.2d 178
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROLAND WHITE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 18, 1965.
Decided February 4, 1965.
*412 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
Mr. Richard B. McGlynn, assigned counsel, argued the cause for appellant.
Mr. Philip Glucksman, Assistant Prosecutor, argued the cause for respondent (Mr. Brendan T. Byrne, Prosecutor of Essex County, attorney).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Defendant was indicted by the Essex County grand jury for the sale of a narcotic drug, heroin, contrary to the provisions of R.S. 24:18-4.
On July 12, 1963, when the indictment was moved, defendant's assigned counsel (not his present one) made a motion to be relieved. He represented to the court that he was having difficulty with defendant, principally by reason of the latter's insistence upon his own ideas as to what the law was. Defendant was demanding that the prosecutor should first move another *413 indictment against him for possession of narcotics. He also complained that assigned counsel had visited him only once prior to the trial date. The trial judge denied counsel's motion to be relieved but postponed the trial until July 15 to afford further time for preparation.
At the trial the State called one Quinones, a federal narcotics agent, who testified as to the alleged sale to him by the defendant. Following cross-examination by his assigned counsel, defendant requested leave of the court to cross-examine the witness further and, thereafter, conduct his own defense with the assistance of assigned counsel. Following an initial denial, the request was granted, assigned counsel being cautioned that he was still attorney of record and that he should extend his services to the defendant if and when needed.
Quinones testified that on the day of the offense, he and one Parker, a government informant, had met the defendant on Jones Avenue near Springfield Avenue in Newark. Parker called defendant over to his car and inquired as to where he could make a purchase of narcotics. Defendant directed them to another area nearby. Shortly thereafter they met defendant at the indicated place and he advised them to go around to Howard and Mercer Streets where "his boy, Buster, was dealing for him around there and would take care of us." When advised that they had been there and had seen no one, defendant said that "he would go there and take care of us himself." They then drove to Mercer Street near Howard, parked the car and waited for defendant for several minutes. When defendant arrived, he again came up to the car and asked "how many" they wanted. The answer was "four," whereupon he was handed $20 and left to enter a tavern on the corner. He emerged after a few minutes, came back to the car, stuck his hand inside and handed over four glassine envelopes which the witness took. Later testimony revealed that they contained a white substance which was identified as heroin. Similar testimony was elicited from Parker.
The defense was entrapment. Following denial of a motion for acquittal defendant took the stand and under examination *414 by his assigned counsel gave an entirely different version of what had transpired. He testified, in substance, that he had previously known Parker and had met him in a tavern on the day of the accident. Parker complained of being ill and asked if he (defendant) had any narcotics. He knew that Parker was a narcotics user and replied that he did not have any. Parker then asked if he knew anyone in the vicinity who had any, to which defendant replied that there were some people in the area who did but he hadn't seen any of them. Eventually, Parker requested him to try to get some from a man named Odis, who was known to both of them and lived on Charlton Street. Defendant attempted to do so but his mission was unsuccessful, and he so advised Parker shortly afterwards. He then went into a tavern at Howard and Mercer Streets and Parker waited in a car which was parked across the street from the tavern. A short time thereafter one Zollie Davis, locally known as "Buster," came into the tavern. Defendant told Davis that Parker wanted to buy narcotics. Davis wouldn't sell to Parker but was willing to sell to him. He then went to Parker, who gave him $20 to buy four bags of narcotics from Davis for him. He then entered the tavern, paid $20 to Davis for the four bags and brought them out to Parker. He stated that he did it only because Parker, who was a narcotics user, claimed he was sick and he was trying to help him. He admitted that Quinones was in the car when he made the delivery. He denied that what he did amounted to a sale, contending that he only acted as a messenger for Parker in the transaction.
At the close of his direct testimony the court asked defendant if there was anything that he wished to add. Defendant then launched into a lengthy and rambling statement in extenuation, during the course of which he admitted that what he had done was a "violation of the law" and that "I am guilty."
Davis was called as a rebuttal witness and denied defendant's testimony as to his part in the alleged sale. After the taking of testimony was completed and counsel for the defendant had *415 summed up, defendant, himself, asked and was allowed to sum up. The jury rendered a verdict of guilty and defendant was later sentenced to a fine of $50 and a prison term of from 3 to 5 years. The present appeal followed.
Defendant first contends that the trial court abused its discretion when it allowed him to participate with assigned counsel in the defense of his own case. Recognizing that there was no objection to the challenged action, he alleges that it constituted plain error under R.R. 1:5-1(a).
The rule is well settled that, with exceptions not here relevant, a defendant in a criminal prosecution may choose to conduct his own defense and waive his right to counsel. State v. Griffith, 14 N.J. Super. 77 (App. Div. 1951); Zasada v. State, 19 N.J. Super. 589 (App. Div. 1952); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). While no case is cited by either counsel in which our own appellate courts have been called upon to determine whether the granting of a defendant's request to conduct his own defense in conjunction with his assigned or retained counsel constituted prejudicial error, both cite cases of our sister states in which the problem has been considered, its difficulties explored and ground rules adopted.
The only New Jersey case called to our attention whose facts resemble those sub judice is State v. Burkitt, 120 N.J.L. 393 (Sup. Ct. 1938). While not dispositive, we find it enlightening. There the defendant sought certiorari to review the affirmance by the Hudson County Common Pleas Court of his conviction for violation of the Disorderly Persons Act. He had been represented by counsel at the trial below, but had insisted upon participating in the trial. The court had required that the case be conducted either by himself or by counsel but not by both. He urged as a ground for reversal that he had been denied counsel by the trial judge. The court held:
"It is next urged that the court erred in denying the defendant the aid and advice of counsel. We do not find this to be the fact. On the contrary, the court in an attempt to conduct the trial in an orderly *416 manner required that either counsel or the defendant try the case, but that both could not do so at the same time. Whenever the defendant wished to address the court or examine a witness, he went through the farcical performance of dismissing counsel, but counsel remained, and throughout the trial, when not actually trying the case, was advising the defendant. The action of the court was entirely within his discretion and was not improper." (at p. 395; emphasis added)
The facts in People v. Evans, 211 Cal. App.2d 534, 27 Cal. Rptr. 304 (D. Ct. App. 1963), somewhat resemble those in the present case. There, defendant became dissatisfied with his court-appointed counsel and made a request to dismiss him. The court denied the request but permitted defendant to try the case himself, after instructing counsel to give as much assistance as the defendant would allow. Counsel conducted the case until, as here, defendant requested and was granted leave to cross-examine a witness. After defendant received a harmful response to a question directed to the witness, counsel, at defendant's request, proceeded to complete the trial of the case. On appeal it was held that the trial court did not err in granting defendant's request to participate. Substantially to the same effect was the holding in People v. Pilgrim, 160 Cal. App.2d 528, 325 P.2d 143 (D. Ct. App. 1958). However, in People v. Mims, 160 Cal. App.2d 589, 325 P.2d 234, 235 (D. Ct. App. 1958), the court upheld the denial of a similar request, holding that whether the defendant should be permitted to participate with his counsel in the trial of the case was a matter resting largely in the trial court's discretion. Compare People v. Northcott, 209 Cal. 639, 289 P. 634, 70 A.L.R. 806 (Sup. Ct. 1930), holding that a defendant may not so proceed as of right.
In United States v. Private Brands, Inc., 250 F.2d 554 (2 Cir. 1957), certiorari denied 355 U.S. 957, 78 S.Ct. 542, 2 L.Ed.2d 532 (1958), it was held that it was not error for the trial court to deny a defendant's motion to undertake the cross-examination of a witness. After pointing out that an accused had the constitutional right to the assistance of counsel and the correlative right to dispense with the counsel's help, the court held:
*417 "`Obviously, however, those rights cannot be both exercised at the same time.' An accused's right to represent himself is not so absolute that it must be recognized when to do so would disrupt the court's business. United States v. Mitchell, 2 Cir., 138 F.2d 831, certiorari denied 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083; United States v. Foster, D.C.S.D.N.Y., 9 F.R.D. 367, 372; see also Overholser v. DeMarcos, 80 U.S. App. D.C. 91, 149 F.2d 23, 26, certiorari denied 325 U.S. 889, 65 S.Ct. 1579, 89 L.Ed. 2002. In the case at bar Mr. Carey in effect wished to be represented by the attorney for the corporation, whose interests were identical with his own, and also act as his own attorney. The trial judge may well have thought this would cause delay and confusion in the trial. We cannot see any abuse of discretion in the way he handled the matter, nor any prejudice resulting to the defendants." (250 F.2d, at p. 557)
Again, in McCann v. Maxwell, 174 Ohio St. 282, 189 N.E.2d 143 (Sup. Ct. 1963), it was held that the trial court had properly required that the accused be represented by counsel notwithstanding his demand that he be permitted to represent himself. Thus:
"It is the general rule that in the absence of unusual circumstances an accused who is mentally competent and sui juris has the right to conduct his own defense without the aid of counsel. Annotation, 77 A.L.R. 2d 1233; and 23 C.J.S. Criminal Law § 979(4), p. 927. In other words, a lawyer may not be forced upon an accused under ordinary circumstances.
However, there must necessarily repose in the trial court a certain discretion in these matters. If the mental condition of an accused is such, either by mental derangement or by lack of knowledge, that the court feels that the accused would be incompetent to conduct his own defense and thus be deprived of a fair trial, or the gravity of the offense is such that it carries a severe penalty, the court may, in the interest of justice or if it feels it necessary in order to protect the judicial process from deterioration, appoint counsel to represent the accused. People v. Burson, 11 Ill.2d 360, 143 N.E.2d 239; and People v. Mitman, 184 Cal. App.2d 685, 7 Cal. Rptr. 712.
Therefore, if a trial court determines that an accused is incompetent to defend himself, the court even over his protests may appoint counsel to represent him." (189 N.E.2d, at p. 145)
Defendant relies heavily on People v. Burson, 11 Ill.2d 360, 143 N.E.2d 239 (Sup. Ct. 1957), referred to above. There the trial court, upon defendant's insistence, had allowed him to participate in the trial, while requiring that court-appointed *418 counsel also lend assistance. The trial which followed was characterized by the reviewing court as having "ended in judicial turmoil." However, in passing upon the propriety of the procedure followed, the court held:
"The record in this case exemplifies that a defendant, who either cannot or will not accept the responsibility of conducting his own defense, can so hinder the ordinary functioning of the judicial process as to render difficult any rational disposition of his case. Our adjudicative procedure is dependent, to a large extent upon the understanding and co-operation between court and counsel, which existed to a high and commendable degree throughout the trial of this case. However, even this rapport could not withstand the onslaught of the defendant's conduct in his own defense. If insane at the time, he should not have been tried on the charge of murder. The sanity issue was properly before the court and its determination was the keystone to the court's rulings on the defendant's rejection of counsel and request to conduct his own defense. If then sane, the defendant, upon the waiver of counsel, had the right to defend himself, subject to the constant duty of the court to protect the judicial process from deterioration occasioned by improper or inadequate conduct of the defense. In such situation the court possesses broad discretion in relation to the appointment of counsel for advisory or other limited purposes, or to supersede the defendant in the conduct of the defense. Continuous supervision of the trial is required in order to maintain proper judicial decorum, to the end that defendant may receive a fair trial. Cf. People v. DeSimone, 9 Ill.2d 522, at page 533, 138 N.E.2d 556." (143 N.E.2d, at pp. 246-247; emphasis added)
Burson, while clearly distinguishable on its facts, emphasizes the broad discretion vested in the trial judge in such matters, both at the time the application is made and thereafter throughout the trial.
We conclude that, while a defendant ordinarily has the right to conduct his own defense without the aid of counsel, the determination of whether a defendant to whom counsel has been assigned may be permitted to participate in the trial of the case, the extent of his participation and the procedure to be followed when it is permitted, are matters resting in the sound discretion of the trial judge. The right of an accused to represent himself, with or without the assistance of counsel, is not so absolute that it must be recognized when to do so would disrupt the business of the court or jeopardize *419 a fair trial of the issues. Among the factors to be considered in determining whether such a request should be granted are whether: (1) allowance of the request could interfere with the orderly trial of the case; (2) such procedure will receive the cooperation of counsel for the accused; (3) defendant, by reason of age, mental derangement or lack of knowledge, appears incompetent to conduct his own defense and would thus be deprived of a fair trial; (4) the gravity of the offense is such that it carries a severe penalty, and in the interests of justice legal representation is necessary, and (5) there appear any other facts or circumstances which, in the reasoned judgment of the court, would interfere with a fair and orderly presentation of the case. If granted, the court may require the parties to conform to the same rules as would be applicable were the case being tried by joint counsel. The determination of the trial judge on this issue will not be reversed in the absence of a showing of abuse of discretion.
We have examined the entire record and are satisfied that the granting of the defendant's request to participate in the trial did not constitute such an abuse of discretion. Defendant was assisted by able counsel, who co-operated whole-heartedly throughout the trial. Defendant was 27 years old, gave the appearance of intelligence and alertness and apparently possessed some experience in court procedure. At times his conduct was such as to call for favorable comment from the court. On one occasion, out of the jury's presence, the court said:
"You are still alert. As I said yesterday, without the presence of the jury, the one tragic thing about this is that you have demonstrated that you have ability and you could have, and I hope somewhere down the line you will retrieve some of your life, because you are wasting yourself. I do not care what the outcome of this case is, but I wish you well."
And further:
"* * * I hope you will keep that in mind. As I said, I wish you well. You have demonstrated some capability and it disturbs me."
*420 There was no abuse of discretion here which affected the substantial rights of the defendant so as to amount to plain error. State v. Lucas, 30 N.J. 37 (1959); State v. Landeros, 32 N.J. Super. 168 (App. Div. 1954), reversed on other grounds 20 N.J. 69 (1955); State v. Micci, 46 N.J. Super. 454 (App. Div. 1957).
Defendant next complains of the admission into evidence of testimony by a witness for the State that defendant had on previous occasions sold narcotics to the witness. Again, in the absence of objection or motion to strike, it is asserted that this constituted plain error. R.R. 1:5-1(a).
During defendant's cross-examination of the witness Parker, the following was elicited:
"Q. [by defendant White] Again, you have testified that you knew the defendant prior to January 26th, is that right?
A. Yes.
Q. Would you please tell the court to the degrees, as far as you are concerned, that you and the defendant had dealings. A. I didn't understand your question.
Q. To the extent of which you and the defendant had dealings. A. Yes I have  I had gotten narcotics from the defendant before.
Q. Do you remember the occasion that you got these narcotics from the defendant?
MR. BLIABLIAS: [assistant prosecutor] Well, if your Honor please, in all fairness to the defendant himself, I am going to object to this.
THE COURT: Yes. Mr. White, honestly, I do not wish to comment, but I wish you would think very carefully before you ask these questions. Now, here is a witness that you are cross examining and you ask him a question like that and he point blankly tells you that he got narcotics from you before.
MR. WHITE: Yes, sir, I understand this.
THE COURT: Why do you want to go into that?
MR. WHITE: All I'm trying to show is to the extent that this witness will go."
Defendant urges that the failure of the trial judge to strike the testimony or admonish the jury to disregard it amounted to prejudicial error affecting the defendant's substantial rights. We disagree. When the matter was called to the attention of the court by the assistant prosecutor's objection, there was no motion to strike by defendant or his assigned *421 counsel. On the contrary, defendant by his answer to the court's admonition, indicated that he had deliberately solicited the response and desired it to stand. The trial judge had no means of knowing otherwise. The absence of any request to charge on the subject confirms this.
Additionally, in view of the defense of entrapment, testimony of the type indicated would have been admissible as evidence of the defendant's predisposition to commit crime. State v. Dolce, 41 N.J. 422 (1964); Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). While such testimony would ordinarily be presented in rebuttal, in view of the fact that the defense of entrapment had been raised in defendant's opening, we cannot say that it was error to permit it to stand. State v. Dolce, supra, 41 N.J., at p. 434. In any event, defendant's substantial rights were in no wise affected by the court's failure to act.
Defendant's final contention is that the trial, in its over-all effect, amounted to a denial of his constitutionally protected substantive and procedural safeguards. He urges that he was deprived of the fair trial, in an atmosphere of judicial calm, before an unprejudiced jury, to which he was entitled. State v. Rios, 17 N.J. 572, 590 (1955); State v. Orecchio, 16 N.J. 125, 129 (1954). We find no merit to this contention. While the trial could have been conducted more speedily, with less interruptions and more constant attention to the issues, the very fact that defendant insisted upon proceeding in the manner indicated rendered these goals difficult of attainment. Whether his knowledge of court procedure was derived from his previous encounters with the law or from television, he insisted on parading it for the benefit of the jury. This called for more than the usual interruptions by the court in an effort to protect defendant's rights and insure a fair trial. At times defendant's conduct became somewhat trying, but the trial judge appears to have exercised patience and forebearance and leaned over backward to insure that defendant's contentions had a fair hearing. Defendant's counsel was even permitted to argue to the jury that, since defendant *422 merely acted as agent to purchase narcotics, he was entitled to acquittal. See State v. Weissman, 73 N.J. Super. 274 (App. Div. 1962).
Perceiving no error, the judgment of conviction is affirmed.