STATE OF NEW JERSEY, PLAINTIFF, v. DAVID MARK RUSSO, DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)
Gloucester County

Decided November 14, 1986.

---

committed malpractice but also the quantum of damages which may be reasonably imposed upon defendants. The damages part of the case will involve both the reasonableness of the amount paid in settlement and the extent to which Karen's injuries were increased by defendant's malpractice. *See Young v. Steinberg, supra.*

*Keith E. Johnson,* Asst. Pros., for State (*Richard E. Hickey,* Gloucester Cty. Pros.).

*P. Jeffrey Wintner,* Dep. Pub. Def. and *Fred B. Last,* Asst. Pub. Def., for defendant.

*David Mark Russo,* Defendant Pro Se.

ALVINO, J.S.C.

On July 11, 1986, the defendant, David Mark Russo, filed two pro se motions, one for dismissal of the two Public Defenders assigned as his counsel, and the other for leave to proceed pro se with court appointed counsel to represent him. On September 11, 1986, oral arguments were presented in which the State, the defendant, and his public defender attorneys participated. It is important to state at the outset, that at this hearing, the defendant withdrew that portion of his motion requesting court appointed counsel. It was made clear by the defendant that the motions addressed only the dismissal of his assigned counsel and the right of the defendant to proceed pro se without appointed counsel to represent him. This opinion addresses the two motions urged by the defendant, specifically:

## I

Whether or not the defendant should be permitted to proceed pro se;

## II

Whether or not his assigned Public Defenders, Fred Last, Esq., and P. Jeffrey Wintner, Esq., should be dismissed as his counsel.

Defendant's motion to proceed pro se, without the assistance of any counsel, will be discussed first.

The defendant properly cited *Faretta v. California*, 422 *U.S.* 806, 95 *S.Ct.* 2525, 45 *L.Ed.*2d 562 (1975), as the controlling case on the issue of proceeding pro se. In *Faretta* the Supreme Court held that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so and the State may not assign a lawyer to represent him when he insists that he wants to conduct his own defense.

A defendant in a criminal prosecution may choose to conduct his own defense and waive his right to counsel, *Adams v. United States ex rel. McCann*, 317 *U.S.* 269, 279, 63 *S.Ct.* 236, 241, 87 *L.Ed.* 268, 275 (1942); *Johnson v. Zerbst*, 304 *U.S.* 458, 468, 58 *S.Ct.* 1019, 1024, 82 *L.Ed.* 1461, 1468–1469 (1938); *Moore v. Michigan*, 355 *U.S.* 155, 161, 78 *S.Ct.* 191, 195, 2 *L.Ed.* 2d 167, 172 (1957); *State v. White*, 86 *N.J.Super.* 410 (App.Div. 1965); *Zasada v. State*, 19 *N.J.Super.* 589 (App.Div.1952); *State v. Burkitt*, 120 *N.J.L.* 393 (Sup.Ct.1938), *but that right is not absolute and there is a strong presumption against such a waiver.* (Emphasis supplied.)

In dealing with the issue of the waiver of counsel and the right to proceed pro se, this court addresses this issue in a two-fold manner: First, this court will look at the importance of counsel; second, whether the waiver was proper.

The importance of the effective assistance of counsel in criminal prosecutions, guaranteed by the Sixth Amendment as well as by the *N.J.Const. Art. 1, par. 10* was addressed in *State v. Sugar*, 84 *N.J.* 1 (1980). The court in *Sugar*, 84 *N.J.* at 16 stated the following:

> Those guarantees recognize the obvious but important truth that "the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty ..." *Johnson v. Zerbst*, 304 *U.S.* 458, 462–463, 58 *S.Ct.* 1019, 1022, 82 *L.Ed.* 1461 (1938); see *Rodriquez v. Rosenblatt*, 58 *N.J.* 281, 295 (1971). Without the guiding hand of counsel, an innocent defendant may lose his freedom because he does not know how to establish his innocence. *Powell v. Alabama*, 287 *U.S.* 45, 69, 53 *S.Ct.* 55, 64, 77 *L.Ed.* 158 (1932); see *Argersinger v. Hamlin*, 407 *U.S.* 25, 31, 92 *S.Ct.* 2006, 2009, 32 *L.Ed.*2d 530 (1972). Trained counsel is also necessary to

vindicate fundamental rights that receive protection from rules of procedure and exclusionary principles. See *State v. McCombs*, 81 *N.J.* 373 (1979); *State v. Stein*, 70 *N.J.* 369, 384 (1976). Where the doctrine supporting those rights "has any complexities the untrained defendant is in no position to defend himself...." [*Rodriquez*, 58 *N.J.* at 295,.]

The Supreme Court in *Faretta*, 95 *S.Ct.* at 2540, stated that "the help of a lawyer is essential to assure the defendant a fair trial." In stating this, the court, in footnote 43, cited the passage from *Powell v. Alabama*, 287 *U.S.* 45, 69, 53 *S.Ct.* 55, 64, 77 *L.Ed.* 158:

Even the intelligent and educated laymen has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect.

In *State v. White*, 86 *N.J.Super.* 410 (App.Div.1965), the court cited an Ohio decision which held the trial court had properly required that the accused be represented by counsel notwithstanding his demand that he be permitted to represent himself. In *McCann v. Maxwell*, 174 *Ohio St.* 282, 189 *N.E.*2d 143 (Sup.Ct.1963), the court stated:

It is the general rule that in the absence of unusual circumstances an accused who is mentally competent and sui juris has the right to conduct his own defense without the aid of counsel. Annotation, 77 *A.L.R.*2d 1233; and 23 *C.J.S. Criminal Law* § 979(4), p. 927. In other words, a lawyer may not be forced upon an accused under ordinary circumstances.

However, there must necessarily repose in the trial court a certain discretion in these matters. If the mental condition of an accused is such, either by mental derangement or by lack of knowledge, that the court feels that the accused would be incompetent to conduct his own defense and thus be deprived of a fair trial, or the gravity of the offense is such that it carries a severe penalty, the court may, in the interest of justice or if it feels it necessary in order to protect the judicial process from deterioration, appoint counsel to represent the accused. *People v. Burson*, 11 *Ill.*2d 360, 143 *N.E.*2d 239 [ (1957) ]; and *People v. Mitman*, 184 *Cal.App.*2d 685, 7 *Cal.Rptr.* 712 [ (1960) ].

■ When addressing the issue of self-representation, it is not just the rights of the accused that are at stake. The interests of the judicial process are equally as paramount. The defendant's right to proceed pro se is not absolute. As stated in *Mayberry v. Pennsylvania,* 400 *U.S.* 455, 468, 91 *S.Ct.* 499, 506, 27 *L.Ed.*2d 532 (1971):

> In every trial there is more at stake than just the interests of the accused; the integrity of the process warrants a trial judge's exercising his discretion to have counsel participate in the defense even when rejected. A criminal trial is not a private matter; the public interest is so great that the presence and participation of counsel, even when opposed by the accused, is warranted in order to vindicate the process itself.

In *State v. Davis,* 45 *N.J.* 195, 197 (1965), the court held a man may defend himself if he can do so with fairness to the State and to the judicial process. The court elaborated as follows:

> Further, in capital cases, we have a policy against the imposition of a death sentence upon a plea of guilty, and upon that same policy would not permit a man at trial to default deliberately to that end. There is no indication that defendant is thus motivated; we mention the subject only because it is a factor which a trial court may have to weigh. Necessarily, there must be a considerable area of discretion in a trial court and its decision should not be rejected unless it was plainly improvident.

■ It is this court's opinion that to permit the defendant to proceed pro se in this capital case would be to reject the caveat set forth in the *Davis* case. Since the case at bar is a capital case and there is the possibility of the defendant's life being taken if a death penalty verdict were reached, the discretion of the trial court should be given great weight. The decision of the trial court should not be rejected unless plainly improper. A capital punishment case deserves the utmost consideration. *Faretta* involved a theft case with only the possibility of incarceration. The defendant in the instant case faces murder and many other serious charges with the possibility of the imposition of the death penalty. During the hearing, the defendant recognized the magnitude of this case by stating, "the bottom line is, your Honor, I'm fighting for my life." In order for defendant to have a fighting chance he needs skilled compe-

tent counsel. More is required on the defendant's part in a death penalty case than in a theft case.

■ In dealing with the issue of proceeding pro se, the court must look at the defendant's waiver of his right to counsel: it must be an intelligent and competent waiver. *U.S. v. Welty*, 674 *F.2d* 185 (3 Cir.1982). There is a strong presumption against waiver in New Jersey. *See State v. Fusco*, 93 *N.J.* 578, 591 (1983); *State v. Abbondanzo*, 201 *N.J.Super* 181, 184 (App.Div.1985).

The court in *State v. White*, 86 *N.J.Super.* at 419 recognized that the right of an accused to represent himself, with or without the assistance of counsel, is not so absolute that it must be granted, when to do so would disrupt the business of court or jeopardize a fair trial of the issues. The court set forth the following factors in determining whether a request to proceed pro se should be granted:

(1) Whether allowance of the request could interfere with the orderly trial of the case; (2) whether such procedure will receive the cooperation of counsel for the accused; (3) whether defendant, by reason of age, mental derangement or lack of knowledge, appears incompetent to conduct his own defense and would thus be deprived of a fair trial; (4) whether the gravity of the offense is such that it carries a severe penalty, and in the interests of justice legal representation is necessary, and (5) there appear any other facts or circumstances which, in the reasoned judgment of the court, would interfere with a fair and orderly presentation of the case.

■ Allowing the defendant's request would interfere with the orderly trial of the case. At the motion hearing, the defendant spoke articulately and intelligently. The court asked, among other questions, whether the defendant felt that he could properly defend himself. The defendant's response was, "I don't know, I could give it my best shot." This court asked the defendant if he was familiar with the Rules of Evidence or Rules of Procedure and the defendant replied that he was not and under *Faretta* that was not necessary. In response to the inquiry by the court, concerning defendant's familiarity with the direct and cross examination of expert

witnesses, the defendant responded, "I will certainly have to learn rather quickly, your Honor."

Furthermore, even though the defendant has displayed himself to be articulate and intelligent before this court, his background indicates a lack of experience or formal training in the area of criminal law, except for his exposure to the current charges. At the hearing the defendant stated that he has a high school education, and studied toward acquiring an associate degree (approximately 1½ years). The defendant has a military background. He entered the Air Force in 1973 and was involved in various military duties, but none involving the law.

The indictment under which this defendant is charged contains nineteen counts of violent crimes, against three victims, alleging capital murder, armed robbery, kidnapping and weapons offenses. It will take skilled, competent counsel to appropriately contest, pre-trial through post-trial, the validity and sufficiency of these charges. Proper motions, timely objections and necessary side bar conferences or recesses are anticipated by the court, and the court should not conduct the case for the defendant if the defendant does not so perform.

The State will produce several expert witnesses. These witnesses should be properly questioned by the defense, but the defendant admitted that he had no experience or training concerning this area. The Court should not be expected to undertake that task.

The trial of a capital case is conducted in two phases, the guilt phase and the penalty phase. Such a trial requires at least two skilled, knowledgeable attorneys to properly prepare the case and conduct the defense. The complexities are many and the duties must be shared by the attorneys. Preparation prior to trial, with the demands of discovery, the interview of witnesses and preparation of motions, combined with the conduct of the actual trial and the arrangement for witnesses to testify, the direct and cross examination of witnesses, the procedural matters involving objections, motions, requests for

charge and evaluation of the court's instructions to the jury, would tax the skill and endurance of two lawyers: it would overwhelm the non-lawyer pro se defendant.

The prosecution should be just as thorough against a pro se defendant as against a defendant represented by counsel.

The defendant has shown a very credible interest and sincerity in his defense, but such interest and sincerity do not constitute the necessary competence and capacity to conduct a case of such magnitude and complexity. The gravity of these offenses is such that they provide most severe penalties. Legal representation is required. The defendant could be confronted by the death penalty or life imprisonment: either penalty is most severe. Under these particular facts and circumstances, to allow the defendant to assume such a great risk is to do an injustice to the defendant and to the judicial process itself.

From a totality of the facts and circumstances, from a review of the entire file and from the record of these proceedings, I do find that the defendant made a knowing waiver of counsel, but not a competent and intelligent waiver. I find, further, that the defendant does not comprehend the magnitude and complexities of the charges and of the entire proceedings, and that he does not possess the requisite competence and capacity to prepare and conduct a proper defense to the allegations as set forth in the indictment.

For the best interests of the defendant, for the public good, in the interest of justice and for the integrity and preservation of the judicial process, legal representation is necessary; it is imperative!

The defendant's motion to proceed pro se is denied.

## II

The defendant contends that his attorneys cannot adequately and capably prepare and execute his defense to the best of their abilities due to his claim of irreconcilable differences, combined with their heavy caseloads, which prevent them from giving his case the proper attention.

In regard to the alleged irreconcilable differences the defendant complains that his Public Defender attorneys are not doing what he wants and he was not included in their discussions concerning his case. The defendant contends that because of their lack of communication, cooperation and coordination with him, he can not work with them: this has resulted in his feelings of animosity toward them. It is important to note that the defendant admits that he was made aware of and informed of the status and progress of his case, but he wanted to, "become part of it"; however, throughout the proceedings the defendant did not elaborate on what he could have done or would have contributed or how he could have aided his attorneys in the legal or factual aspects of his defense, or how he was prejudiced by failure to, "become part of it."

Prior to the defendant reciting the existing animosity, the court questioned him as follows:

Q. Have you asked your attorneys to speak to "x" witnesses and do you know if they have not done so?

A. They were diligent in this matter.

Q. Did you ask them or request the Public Defenders to do anything and they did not comply with your requests?

A. Many questions were not asked by the Public Defenders. I am confused by this. I asked my attorneys and *they answered to the best of their ability. I can't think of instances where Public Defenders did not follow through with witnesses.* (Emphasis supplied).

It was at this point that the defendant stated, "I cannot work with the Public Defenders in an attorney-client relationship because of this animosity toward the Public Defender." With respect to defendant's statement, he expressed dissatisfaction over a situation concerning two potential witnesses for the defense. The defendant stated, "the handling of the situation was totally dissatisfactory to me. It was a non-professional handling of the witnesses; they [his attorneys] could.have left their animosity out. As a result, a rift resulted and I don't know how they [the witnesses] will respond in the future."

When the defendant was asked if he experienced any restriction concerning visits from his attorneys, the following discussion occurred:

A. They visit whenever they are able to.

Q. Does this go to when you wanted them to?

A. Strictly at their convenience. The Public Defenders are in the Courthouse basically all the time. They could have left me a note.

It appears that the defendant relies on the above incidents in expressing his dissatisfaction with his attorneys.

The record of this case will reflect that the defendant applied for and received public defender counsel in April 1985, after he was unsuccessful in retaining private counsel. From the time of such assignment to the date of July 17, 1986, when defendant filed these motions, innumerable pleadings had been filed on behalf of the defendant by present counsel. Many motions were presented and argued on behalf of this defendant and he was present at every motion hearing.

The most dramatic of these motions was the April 1, 1986 challenge to the system of selecting the pool of qualified persons who would constitute the array for the grand and petit juries in Gloucester County. An evidentiary hearing was conducted. The defendant was present: his public defender attorneys represented the defendant with the aid of an attorney who had great expertise in this area. Two lay witnesses and four experts testified, all for the defense: The defense was successful; statutory and constitutional violations were revealed; the system was defective; it was not random; grand jury proceedings and criminal jury trials were suspended until the defects were cured and an approved system was devised. This was accomplished on July 7, 1986.

In regard to the defendant's dissatisfaction with his attorneys, this court questioned the defendant concerning his reaction to his attorneys' motions in successfully challenging the jury selection process in Gloucester County. The defendant was asked if he was happy with the result and the defendant replied, *"it was a bitter sweet victory."* (Emphasis supplied). This court finds that this response is indicative of the shallow nature of defendant's complaints with his assigned counsel.

From the history of this case, it is proper to indicate that much time, effort and expense had been provided by his counsel in their motions challenging the jury selection process.

It is significant to state that Mr. Last represented that approximately 80 hours have been spent with the defendant in discussing his case with him. Also, the argument concerning the public defenders' backlog of cases lacks merit. Mr. Last specifically stated that although there is a heavy caseload, priority is given to this case because it is a complex case and a capital case; also, this court ordered such priority.

In *State v. Buffa*, 65 *N.J.Super.* 421, 425 (App.Div.1961), the court held that the Constitution does not guarantee that counsel for a defendant shall measure up to his notions of ability or competency. Counsel is not required to be infallible. *See also, State v. Bentley*, 46 *N.J.Super.* 193, 203 (App.Div.1957).

The relevant case law indicates that the policy is to refuse requests of indigent defendants to dismiss assigned counsel and of assigned counsel to be relieved. *State v. Smith*, 43 *N.J.* 67, 72 (1964), *cert. den.* 379 *U.S.* 1005, 85 *S.Ct.* 731, 13 *L.Ed.*2d 706, reh'ing den. 380 *U.S.* 938, 85 *S.Ct.* 945, 13 *L.Ed.*2d 826. The court in *Smith* stated, "[T]oo often defendants who petition for counsel on the plea that they are indigent and unable to represent themselves seek to supervise assigned counsel and even question his integrity if his performance does not satisfy the defendant's critical eye." *Id.* at 72–73.

In *State v. Wiggins*, 158 *N.J.Super.* 27, 34 (App.Div.1978), the court reiterated that the policy is to refuse a request to discharge competent assigned counsel absent a showing of substantial cause.

Additionally, in *State v. McCombs*, 171 *N.J.Super* 161, 164 (App.Div.1978), *aff'd.* 81 *N.J.* 373, the defendant sought to have the public defender assigned to the case dismissed because on the day fixed for trial the defendant told the court that he had only seen his attorney twice and "each time it was only for a matter of minutes." The court held that the trial judge properly rejected an effort to dismiss assigned counsel. The court

stated "we are satisfied from our examination of the record that he performed his task thoroughly and competently." In the case at bar, this court is satisfied that the public defender's performance and handling of this case has been competently performed and there is no showing of substantial cause. The defendant's complaints against his assigned counsel are unwarranted. The demands, duties and obligations upon his attorneys have been thoroughly, competently and diligently addressed.

When a court finds the absence of substantial cause for removal and finds that the duties and obligations of counsel to the defendant have been thoroughly and competently performed, and when a court further finds that great care and diligence have been and are being exercised by counsel to protect the rights of the defendant, a court must deny the defendant's motion for dismissal of his counsel. I do so find; I do so rule; the motion to dismiss Counsel is denied. This decision is based upon a totality of the matters contained in the record of this case with this Court's comments and reasons set forth in the defendant's motion to proceed pro se and the response by counsel to the demands and obligations of their representation of the defendant.

Counsel for defendant will prepare an appropriate Order.