**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5249-16T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

OTIS L. WILLIAMS,

      Defendant-Appellant.

_____

Submitted October 3, 2018 – Decided November 26, 2018

Before Judges Vernoia and Moynihan.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 15-10-2271 and 16-10-2966.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore Stephens II, Acting Essex County Prosecutor, attorney for respondent (Tiffany M. Russo, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Otis L. Williams appeals from his conviction for first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), following his guilty plea, arguing:

POINT I

THE COURT ERRED BY DENYING THE MOTION TO DISMISS THE SUPERSEDING INDICTMENT.

1. BECAUSE THE ADDITIONAL EVIDENCE DISCOVERED BY THE PROSECUTOR BETWEEN THE TWO GRAND JURY PRESENTATIONS WAS NOT PROBATIVE OF WHETHER WILLIAMS HAD A MORE CULPABLE MENTAL STATE, THE SUPERSEDING INDICTMENT SHOWS ACTUAL VINDICTIVENESS.

2. AFTER THE FIRST GRAND JURY FOUND PROBABLE CAUSE TO BELIEVE THAT WILLIAMS ACTED WITH A MERELY RECKLESS MENTAL STATE, IT VIOLATED THE GRAND JURY'S ESSENTIAL DECISION-MAKING FUNCTION, AS WELL AS WILLIAMS'S RIGHT TO DUE PROCESS, FOR THE PROSECUTOR TO GIVE THE SECOND GRAND JURY A PURPOSEFUL-INTENT-OR-NOTHING INSTRUCTION.

3. PROPOSED REMEDIES.

POINT II

ALTERNATIVELY, THIS COURT SHOULD REMAND FOR A NEW PLEA COLLOQUY, BECAUSE THE DEFENDANT'S FACTUAL BASIS DID NOT ESTABLISH ANY CULPABLE MENTAL

2

STATE, LET ALONE THE EXTREME INDIFFERENCE TO HUMAN LIFE REQUIRED TO SUSTAIN AN N.J.S.A. 2C:11-4(A)(1) CONVICTION FOR AGGRAVATED MANSLAUGHTER.

POINT III

ALTERNATIVELY, THIS COURT SHOULD REMAND FOR A NEW HEARING ON THE MOTION TO WITHDRAW THE PLEA, BECAUSE WILLIAMS WAS DENIED HIS RIGHT TO PLEAD HIS OWN CAUSE.

We are unpersuaded by any of these arguments and affirm.

After the State presented charges of first-degree murder, N.J.S.A. 2C:11-3(a) – and lesser included offenses of first-degree aggravated manslaughter and second-degree manslaughter, N.J.S.A. 2C:11-4(b) – in connection with the asphyxiation death of Le'lia Whatley, the grand jury returned an indictment charging defendant with a sole count of second-degree manslaughter. Over fifteen months later a New Jersey State Police forensic laboratory report[1] identified defendant as the major DNA profile that was found on the victim's vaginal and cervical area and the DNA source of dry secretions found around her neck; his DNA also matched the profile taken from a watch found at the

---

[1] The date of the New Jersey State Police forensic laboratory report is taken from the State's merits brief and its trial court brief defending against defendant's motion to dismiss the superseding indictment. The forensic laboratory report was not provided in the record on appeal.

doorway of the victim's apartment where her body was found. The State included that evidence when it sought and obtained a superseding indictment from a second grand jury charging defendant with one count of first-degree murder, which was the subject of defendant's motion to dismiss. Subsequent to the denial of that motion, defendant pleaded guilty to an amended charge of first-degree aggravated manslaughter but preserved his right to appeal the denial of the motion to dismiss the indictment.[2]

Defendant reprises his argument before the trial judge: the second indictment should be dismissed because the State vindictively presented the newly-obtained DNA evidence that provided only a link between defendant and the homicide, but did not provide proof that justified the second grand jury's finding of the more culpable mental states of knowing and purposeful conduct, which were rejected by the first grand jury.[3] Judge Michael L. Ravin rejected defendant's contentions, presciently finding: no law prevented re-presentation;

---

[2] The plea agreement also included charges on an unrelated matter.

[3] In order to prove murder, the State must prove a defendant purposely or knowingly caused the victim's death or serious bodily injury that resulted in death. N.J.S.A. 2C:11-3(a)(1),(2). The State must prove that a defendant recklessly caused the victim's death to sustain a manslaughter conviction. N.J.S.A. 2C:11-4(b)(1).

the State's new DNA evidence justified the re-presentation of the case; and the State's re-presentation was not vindictive.

In reviewing the judge's decision to dismiss the indictment, we "must ensure that the correct legal standard was employed by the trial court." State v. Abbati, 99 N.J. 418, 436 (1985); see also State v. Shaw, 455 N.J. Super. 471, 481 (App. Div. 2018). We review legal questions de novo. Shaw, 455 N.J. Super. at 481. The review of the dismissal, however, is for abuse of discretion, State v. Hogan, 144 N.J. 216, 229 (1996), and recognizing that the judge's exercise of discretion will not be disturbed on appeal unless there is a clear abuse of discretionary authority, State v. Saavedra, 222 N.J. 39, 55-56 (2015), we affirm Judge Ravin's dismissal of the indictment substantially for the reasons set forth in his comprehensive and cogent written decision.

We recently concluded – subsequent to Judge Ravin's decision – "no New Jersey statute or common law precedent . . . categorically bars a prosecutor from choosing to submit a case to a new grand jury after one has previously voted a no bill, or requires the State to present new evidence as a condition of resubmission." Shaw, 455 N.J. Super. at 484. We surmised, however, considering the pitfalls of boundless re-presentations, that our Supreme Court "would place some limits on successive resubmissions, in order to respect the

grand jury's screening function to shield the innocent; control the abusive exercise of prosecutorial discretion; and assure defendants fundamental fairness"; we, however, did not set those limits.  Id. at 488.  Nor need we fix those limits in this case.

Judge Ravin recognized that the State's witness, when asked by a grand juror during the first proceedings if there was any forensic evidence that linked defendant to the victim's strangulation, responded there was not.  The only DNA evidence that existed at that time indicated defendant was a match to some of the seminal fluids collected from the victim's body, not from her neck.  We agree with Judge Ravin that "[b]y testifying before the second grand jury that DNA evidence linked [d]efendant to the victim's neck, [the State's witness] presented new evidence that went directly to the issue of [d]efendant's culpability with respect to the strangulation of the victim, which caused her death."  We also agree with his finding that the newly-confirmed DNA evidence from the watch found at the crime scene was also material to the second panel's return of a first-degree murder indictment.  Inasmuch as the new evidence not only provided a more solid link between defendant and the homicide, but also connected defendant to the neck compressions that caused the victim's death, we see no

abuse by the State's resubmission of the case to the second grand jury, nor any abuse of discretion by Judge Ravin in denying defendant's motion to dismiss.

We also agree with Judge Ravin's conclusion that defendant failed to show the State was vindictive in seeking the second indictment. The State resubmitted the case during the pretrial stage. A presumption of vindictiveness, therefore, was not justified. State v. Gomez, 341 N.J. Super. 560, 574 (App. Div. 2001). In Gomez, we observed:

> Trial preparation or continuing investigation may well lead the prosecutor to the reasonable conclusion that additional or substituted charges are appropriate. The fact that a prosecutor seeks or obtains additional charges after a defendant seeks and asserts a right prior to trial should not result in a per se presumption of vindictiveness. Rather the issue is whether the prosecutor's action was solely retaliation against defendant for the exercise of a legal right.
>
> [341 N.J. Super. at 575 (citations omitted).]

The new DNA evidence presented a non-vindictive reason for resubmission of the case to the grand jury, enfeebling defendant's contention that the vindictive second presentation was provoked by defendant's refusal to plead guilty. Judge Ravin's sound decision was not an abuse of discretion.

Defendant's argument that the State's all-or-nothing instruction to the grand jury, requesting that they return an indictment only for first-degree

7

murder, violated the grand jury's decision-making function and defendant's due process rights was not raised to the trial court; we will not consider it here. State v. Robinson, 200 N.J. 1, 20 (2009). If we did, his argument, based on the inapposite holding in Keeble v. United States, 412 U.S. 205 (1973) – which dealt with lesser included offenses presented to a trial jury, not a grand jury – would be without sufficient merit to warrant discussion. R. 2:11-3(e)(2). We previously held in State v. Pessolano, absent a manifest legislative intent to prosecute under a single statute,

> "[i]n the many situations where criminal statutes overlap in prohibiting the same basic act, the [prosecutor] in the sound exercise of the discretion committed to him may proceed under either act," State v. Gledhill, 67 N.J. 565, 574 (1975)[,] so long as judgment is not entered against the defendant "under more than one statute for the same offense." State v. Pescatore, 213 N.J. Super. 22, 30 (App. Div. 1986).
>
> [343 N.J. Super. 464, 475 (App. Div. 2001).]

Although defendant moved the trial court to withdraw his plea, his argument there was based on the Slater[4] factors. He presently argues that his

_____

[4] State v. Slater, 198 N.J. 145, 157-58 (2009) (holding a judge considering a defendant's plea withdrawal motion must "consider and balance four factors in evaluating motions to withdraw a guilty plea: (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4)

admissions during the plea colloquy did not establish a factual basis for any culpable mental state, "let alone the extreme indifference to human life required to sustain" a plea to aggravated manslaughter. Such a challenge is cognizable on direct appeal, as we are "in the same position as the trial court in assessing whether the factual admissions during a plea colloquy satisfy the elements of the offense." State v. Urbina, 221 N.J. 509, 527-28 (2015). Our review is de novo. State v. Tate, 220 N.J. 393, 403-04 (2015).

Our review of the record reveals defendant's admissions established a factual basis for the crime as required by Rule 3:9-2. Defendant's admissions had to establish that he "recklessly cause[d] death under circumstances manifesting extreme indifference to human life." N.J.S.A. 2C:11-4(a)(1). A defendant acts "recklessly"

> when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.
>
> [N.J.S.A. 2C:2-2(b)(3).]

whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused").

Defendant admitted that after he went to the victim's house, he "put [his] hands on her neck and [–] a moment [–] minutes later, she was dead." The judge questioned defendant and the following discussion ensued:

> THE COURT: [W]hen you placed your hands around Le'lia Whatley's neck, . . . did you strangle her? Like, for example, if somebody put their hands around my neck, and the next thing I knew I was dead, I guess one could say I'd been strangled. Somebody . . . choked me. Did you choke her?
>
> [DEFENDANT]: Yes, yeah, yeah.
>
> THE COURT: (Pause). And the result of you choking her, she died?
>
> [DEFENDANT]: (Pause). Yeah.

We are guided by our Supreme Court's recognition that defendants are reticent when faced with "admitting the distasteful reality that makes the charged conduct criminal" during a plea colloquy, State v. Smullen, 118 N.J. 408, 415 (1990), during which they often exhibit a "natural reluctance to elaborate on the details," State ex rel. T.M., 166 N.J. 319, 334 (2001). Thus, in determining if a factual basis exists, courts may draw rational inferences from the defendant's admissions. State v. Campfield, 213 N.J. 218, 236-37 (2013).

Under that lens, defendant's admission that he put his hands on the victim's neck and choked her until, minutes later, she was dead establishes that he

disregarded a substantial and unjustifiable risk that choking her for minutes would cause her death.  It can be reasonably inferred that the disregarded risk from such conduct was a gross deviation from what a reasonable person would do in defendant's situation.  See N.J.S.A. 2C:2-2(b)(3).  Although perhaps the more thorough practice would have been to have defendant admit that he was aware of and consciously disregarded the risk that his actions would cause the victim's death, and that his conduct resulted in a probability of her death, his admission was sufficient to establish the mental state for the crime.  Defendant's admitted-specific facts – choking Le'lia Whatley for minutes until she was dead – distinguish this case from those where a factual basis was deemed inadequate.  See, e.g., State v. Vasco, ___ N.J. ___ (2018) (adopting Judge Marianne Espinosa's dissent, State v. Vasco, ___ N.J. Super. ___, ___ (App. Div. 2018) (slip op. at 19), which observed that defendant, charged with possession of a weapon for an unlawful purpose, "admitted he knowingly possessed the weapon" . . . but "admitted little else").

We determine defendant's argument that a remand to the trial court is required for a new hearing on his plea withdrawal motion because he was denied the right to make his own arguments lacks merit.  Defendant interjected during Judge Ravin's oral decision after both sides had presented their positions and

11

asked, "Do I get a chance to speak to defend myself? Or do I have to . . . fire my attorney and just go pro se?" Defendant interrupted when the judge attempted to ascertain if defense counsel had presented "everything [he] needed to say on behalf of [his] client," and, again during the judge's attempt to complete his decision, asking if he could "go pro se." The judge ultimately finished his decision and postponed defendant's sentencing – with which the judge wanted to proceed immediately after the delivery of his decision. It is obvious defendant made his oral request to proceed pro se only after it became apparent the judge was not going to grant his motion to withdraw his plea.

We note, significantly, that defendant never raised the issue again, even when he had the opportunity to address the court at the next hearing – the last hearing in this case – when he was sentenced. His outburst during the judge's ruling on the penultimate issue in the case did not amount to a cognizable request to represent himself. As we previously determined:

> "The right of an accused to represent himself, with or without the assistance of counsel, is not so absolute that it must be recognized when to do so would disrupt the business of the court. . . ." State v. White, 86 N.J. Super. 410, 418-19 (App. Div. 1965). A defendant cannot participate in a "cat and mouse game," State v. Slattery, 239 N.J. Super. 534, 542-43 (App. Div. 1990), by placing the judge in the "unenviable dilemma" where, in managing the affairs of the court, he appears

to be arbitrarily depriving the accused of counsel. State v. Buhl, 269 N.J. Super. 344, 363 (App. Div. 1994).

[State v. Roth, 289 N.J. Super. 152, 164-65 (App. Div. 1996).]

A defendant's failure to abide by our Rules requiring the filing of a motion to proceed pro se deprives the court and the State of an opportunity to fully address the issue. See R. 1:6-2. The searching inquiry now required of trial judges when a defendant requests self-representation is a lengthy process that cannot be attended to without preparation. Notice is required to allow the judge to meet the imposed obligations of ensuring that defendant: is informed of the consequences of self-representation;[5] understands the ramifications; and

---

[5] Court holdings require:

> the trial court to inform a defendant asserting a right to self-representation of (1) the nature of the charges, statutory defenses, and possible range of punishment; (2) the technical problems associated with self-representation and the risks if the defense is unsuccessful; (3) the necessity that defendant comply with the rules of criminal procedure and the rules of evidence; (4) the fact that the lack of knowledge of the law may impair defendant's ability to defend himself or herself; (5) the impact that the dual role of counsel and defendant may have; (6) the reality that it would be unwise not to accept the assistance of counsel; (7) the need for an open-ended discussion so that the defendant may express an understanding in his or her own words;

knowingly and voluntarily waives the right to counsel. <u>Crisafi</u>, 128 N.J. at 512-13. In that defendant failed to make a proper application to proceed pro se, there is no cause to grant a remand for a new hearing on the motion to withdraw his plea.

Defendant's remaining arguments are without sufficient merit to warrant discussion in this opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

(8) the fact that, if defendant proceeds pro se, he or she will be unable to assert an ineffective assistance of counsel claim; and (9) the ramifications that self-representation will have on the right to remain silent and the privilege against self-incrimination.

[<u>State v. DuBois</u>, 189 N.J. 454, 468-69 (2007).]